**Burney MILLER, Petitioner,**

v.

**UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE,**
Respondent.

**No. 83–3486.**

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6),
March 28, 1985.

Decided May 10, 1985.

James J. Orlow, Orlow, Fuller, Rubin & Steel, Philadelphia, Pa., for petitioner.

Alexander Ewing, Jr., Asst. U.S. Atty., Philadelphia, Pa., Allen W. Hausman, Michael J. Creppy, Stewart Deutsch, Office of Immigration Litigation, Civil Div., U.S. Dept. of Justice, Washington, D.C., for respondent.

Before ALDISERT, Chief Judge, SLOVITER, and STAPELTON *, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

Petitioner Burney Miller, a Jamaican citizen, entered the United States lawfully on April 19, 1969 as a nonimmigrant visitor for pleasure, authorized to remain until May 10, 1969. She did not leave at that time and therefore was deportable as an "overstay" under section 241(a)(2) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(2) (1982), which provides for deportation of anyone who:

is in the United States in violation of this chapter or in violation of any other law of the United States....

Accordingly, Miller was placed in deportation proceedings under section 242, 8 U.S.C. § 1252 (1982), and on January 17, 1975 the immigration judge relied on her own admissions in finding her deportable. The immigration judge granted her voluntary departure on or before March 1, 1975, but ordered that if she failed to depart, she would be deported to Jamaica. Appeal was waived. Miller did not leave the country voluntarily and was never deported.

During the years from 1968 to 1976, the Attorney General ordered that the visa numbers of Cuban refugees who had their status adjusted to permanent resident aliens pursuant to the Cuban Adjustment Act, Pub.L. No. 89–732, 80 Stat. 1161 (1966), be charged against the Western Hemisphere quota, thereby reducing the visa numbers available to people like Miller who were citizens of other Western Hemisphere countries. A class action challenging this policy was brought on behalf of visa applicants from Western Hemisphere countries whose applications were filed between July 1, 1968 and December 31, 1976 and had not yet been processed. The plaintiff class contended that its members were immediately entitled to the 144,999 visa numbers erroneously charged against the Western Hemisphere quota. The defendants, the Attorney General, the INS, the Department of State and other federal officials, conceded liability and sought to develop a program to recapture and reissue the wrongfully issued visa numbers. See Silva v. Bell, 605 F.2d 978, 982 (7th Cir.1979).

In accordance with a district court order in Silva the INS sent Miller a letter on September 28, 1979 which stated:

Due to court order in Silva v. Levi 76–C–4268 entered by District Judge John H. Grady in the District Court for the Northern District, Illinois, we are taking no action on this case until further order from the Court. This means that you are permitted to remain in the United States without threat of deportation or expulsion until further notice.

In view of this order, employment is authorized by this Service as of this date.

A.R. at 132.

On January 7, 1980 an immigration judge granted Miller's unopposed motion to reopen the deportation proceedings, presumably to enable Miller to seek relief under Silva. Four hearings were scheduled in the reopened proceeding during 1980 and 1981 but were postponed because, according to INS, Miller failed to appear. Therefore, the hearings were not held until April and May, 1983.

* Hon. Walter K. Stapleton, who was Chief Judge, United States District Court for the District of Delaware, sitting by designation at the time of submission, has since been appointed to the Court of Appeals.

In the meantime, the *Silva* injunction was dissolved because all available visa numbers had been allocated. During that period, Miller's husband became mentally ill and returned to Jamaica. After the departure of her husband, Miller, the mother of four American children, began receiving welfare benefits and ultimately pleaded guilty in a New Jersey state court to a criminal charge for welfare fraud. She was sentenced to five years of probation and ordered to pay restitution of $1,222 and to participate in a community service program.

Under section 212(a)(9), 8 U.S.C. § 1182(a)(9), conviction for a crime of moral turpitude is grounds for exclusion. Miller concedes that her conviction for welfare fraud is such a crime. However, section 212(h) contains a waiver provision which states:

Any alien who is excludable from the United States under paragraphs (9), (10), or (12) of subsection (a) of this section ... who ... (B) has a son or daughter who is a United States citizen or an alien lawfully admitted for permanent residence, shall, if otherwise admissible, be issued a visa and admitted to the United States for permanent residence (1) if it shall be established to the satisfaction of the Attorney General that (A) the alien's exclusion would result in extreme hardship to the United States citizen or lawfully resident spouse, parent, or son or daughter of such alien, and (B) the admission to the United States of such alien would not be contrary to the national welfare, safety, or security of the United States; and (2) if the Attorney General, in his discretion, and pursuant to such terms, conditions, and procedures as he may by regulations prescribe, has consented to the alien's applying or reapplying for a visa and for admission to the United States.

8 U.S.C. § 1182(h).

Under the statute, although a conviction of a crime of moral turpitude furnishes the basis of excludability of an alien, it may be used as the basis for deportation only under certain circumstances. Section 241(a)(4) provides for deportation of anyone who

is convicted of a crime involving moral turpitude committed within five years after entry *and* either sentenced to confinement or confined therefore in a prison or corrective institution, for a year or more, or who at any time after entry is convicted of two crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial.

8 U.S.C. § 1251(a)(4) (1982) (emphasis added). Miller was not sentenced to a year imprisonment, and although she has been in INS custody for more than a year, she remains there because she is unable to post bail.

At the reopened deportation hearing which was finally held in April and May of 1983, Miller sought, *inter alia*, an adjustment of status to permanent resident under section 245(a), which provides that the Attorney General may make such an adjustment if:

(1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

8 U.S.C. § 1255(a) (1982). The immigration judge found that Miller had not satisfied the first requirement because no application for adjustment was found in the file. He also stated, without further discussion, that Miller is "also without any immigrant visa, immediately available for such purposes of adjustment under Section 245, and is no longer covered by the *Silva vs. Levy* injunction since this injunction has been dissolved."

The immigration judge then turned to Miller's other grounds for relief, an application for suspension of deportation under section 244, 8 U.S.C. § 1254 (1982). The immigration judge denied that application,

holding that Miller was ineligible for a suspension of deportation under section 244 because her conviction for welfare fraud precluded her from establishing that she was of good moral character, a statutory prerequisite to relief. The judge also denied without discussion Miller's application for waiver of the conviction for welfare fraud as a ground of excludability under section 212(h), 8 U.S.C. § 1182(h) (1982). The Board of Immigration Appeals affirmed, holding, with respect to her application for suspension of deportation, that Miller could not satisfy the good moral character requirement and that the merits of the application for waiver under section 212(h) did not need to be addressed because the basis for deportation was not the conviction, but the "overstay," a ground that could not be waived under section 212(h). Miller's Petition for Review of that order is before this court.

Miller's claim for suspension of deportation is governed by section 244(a)(1) which provides for relief for an alien who

> (1) is deportable under any law of the United States except the provisions specified in paragraph (2) of this subsection; has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application, and *proves that* during all of such period *he was and is a person of good moral character;* and is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

8 U.S.C. § 1254(a)(1) (emphasis added). The BIA held that Miller was precluded from proving good moral character, as required by this provision, because she had been convicted of a crime of moral turpitude. Section 101(f)(3), 8 U.S.C. § 1101(f)(3) (1982), includes persons convicted of crimes of moral turpitude among the classes precluded by law from being found to be of good moral character.

■ Miller contends that had she been able to obtain a waiver under section 212(h), her conviction could not have been a basis for a finding that she lacked good moral character. We reject this argument for the same reason given by the BIA. Section 212 gives the Attorney General discretion to waive some of the grounds, including a conviction for a crime of moral turpitude, for excluding an alien who seeks entry into the United States. Even if this section is interpreted to permit the waiver of some grounds for deportation as well, *see Francis v. INS*, 532 F.2d 268 (2d Cir. 1976), it would not be of assistance to Miller. She is being deported as an "overstay," not because of her conviction. Therefore, the waiver of conviction under section 212(h), if granted in the discretion of the Attorney General, would be effective only as to excludability and not, under the facts of this case, to deportation. A section 212(h) waiver does not by its terms apply to section 101(f). Section 101(f) explicitly precludes someone, such as Miller, who has been convicted of a crime of moral turpitude from making a showing of "good moral character" as a matter of law. Therefore, there was no reason for the BIA to rule on Miller's application for waiver under section 212(h). Congress has not only chosen not to apply the section 212(h) waiver to section 101(f), it has also chosen not to confer authority on the Attorney General to waive the "good moral character" requirement as defined in section 101(f) which is needed for suspension of deportation under section 244(a)(1). Therefore we conclude that the BIA correctly held that Miller was ineligible for suspension of deportation under section 244(a)(1).

■ While this petition for review was pending, a copy of Miller's application for adjustment of status under section 245 was located, and Miller has moved to remand for consideration of that application. Miller contends that the misfiling of the application deprived her of due process, and that she is entitled to an administrative determination of her application for adjustment of status. The BIA did not address

this issue, apparently because of the erroneous belief of the immigration judge that Miller had not applied for adjustment of status.

The INS argues that there should be no remand because the failure to locate the documents constituted in any event harmless error. According to it, "the priority visa date and adjustment of status became moot issues in petitioner's circumstances." Respondent's Opposition to Petitioner's Motion to Remand at 6. Miller responds that even though the visa numbers available under *Silva* had already been allocated and the injunction dissolved at the time of her 1983 hearing, the INS had a policy that permitted aliens in the *Silva* class who had applications pending when the number of available visas was exhausted to remain in a "pending category" until additional visas became available.

Of course, if Miller cannot show that there was an immigrant visa "immediately available to [her] at the time [her] application [was] filed," she is ineligible for relief under section 245(a)(3). The INS's argument that the *Silva* injunction and visas were exhausted fails to take account of the statutory language which looks to the availability of visas "at the time [the alien's] application is filed." Because the BIA has not addressed this issue, we do not know whether it would hold this statutory requirement was satisfied by the availability of *Silva* relief at the time of Miller's application for adjustment of status. Also, we have noted, but no party has illuminated the effect on Miller's situation of the statement in one of the documents attached to the INS's opposition to the motion to remand, an INS telegram to all regional and district offices dated 8/29/82, that the policy placing the remaining *Silva* class members in a "pending category" "will not apply to *Silva* letter holders who have been convicted of criminal acts within the U.S. or are otherwise excludable under U.S. Immigration Law."

Under the circumstances we believe that the most appropriate course is for us to remand Miller's application for adjustment of status to the BIA so that it may consider the issue in light of the newly discovered evidence. Neither party has suggested this issue would be mooted by our ruling on the suspension of deportation issue, and thus we merely note the possibility that a stay of deportation may be forthcoming. *See* 8 C.F.R. § 243.4.

Although we recognize there are a number of priority items on the docket of the BIA, we are hopeful that it can turn expeditiously to the Miller matter, particularly because she remains in custody for inability to post bail and because, as the BIA itself found, "the respondent has substantial equities."

For the foregoing reasons, we will deny the petition for review with respect to suspension of deportation, but grant the petitioner's motion for remand with respect to the application for adjustment of status.