**J. Carmen HERNANDEZ–PATINO, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 86–1146.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 9, 1986.

Decided Oct. 6, 1987.

As Amended Dec. 11, 1987.

---

GRANT, Senior District Judge.

Petitioner J. Carmen Hernandez–Patino seeks review of the decision of the Board of Immigration Appeals (BIA) denying his application for suspension of deportation. The BIA affirmed the decision of the immigration judge, finding both a lack of "extreme hardship" were Hernandez–Patino to be deported to Mexico, and, contrary to the immigration judge's conclusion, a lack of continuous physical presence in the United States for a period of seven years. This petition for review contests both findings of the BIA. This Court has jurisdiction under section 106(a) of the Immigration and Nationality Act, 8 U.S.C. § 1105a(a). *See Marquez–Medina v. INS,* 765 F.2d 673 (7th Cir.1985). We affirm the order of the BIA and dismiss the petition.[1]

## I

Hernandez-Patino is a thirty-nine year old native and citizen of Mexico who migrated to the United States either in 1977 or in 1978. He entered the United States without inspection by an immigration officer, leaving his wife and children in Mexico. Since entering the country, he has worked as a cook in an Illinois restaurant, earning up to $200 per week. In 1980, Hernandez–Patino's wife and two of four Mexican-born children entered the United States to reunite with the petitioner. Since then, the family added three United States-born citizen children, ages four years, three years and eleven months, but the two oldest native Mexican children remain in Mexico.

In July 1983, the government charged Hernandez–Patino with deportability for entering the country without inspection by an immigration officer. 8 U.S.C. § 1251(a)(2). He conceded deportability and at the subsequent deportation hearing the immigration judge denied an application to suspend deportation. The BIA de-

Susan R. Gzesh, Alexander, Fennerty & Fujimoto, Chicago, Ill., for petitioner.

Alison R. Drucker, Office of Immigration Litigation Civil Div., Dept. of Justice, Washington, D.C., for respondent.

Before EASTERBROOK and RIPPLE, Circuit Judges, and GRANT, Senior District Judge.*

* Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, sitting by designation.

1. In its Order of January 12, 1987, this Court stayed further proceedings in this case until July 1, 1987, to provide petitioner opportunity to apply for legalization under the Immigration Reform and Control Act of 1986. Since petitioner did not respond by July 1, we extended the stay until July 31, 1987. Petitioner Hernandez–Patino has not filed a copy of application for legalization with this Court; hence the stay is lifted and this opinion issued.

nied Hernandez–Patino's appeal, sustaining the immigration judge's finding that the petitioner and his U.S. citizen children would not suffer "extreme hardship" were petitioner to be deported to Mexico, but reversing the judge's finding that petitioner had fulfilled the statutory requirement of continuous physical presence in the United States for a period of seven years. Hernandez–Patino petitions for review of the BIA decision.

## II

Section 244 of the Immigration and Nationality Act, as amended, 8 U.S.C. § 1254(a), accords the Attorney General discretion to suspend the deportation of an otherwise deportable alien if the alien has been present in the United States for a continuous period of at least seven years, is of good moral character and demonstrates that deportation would result in extreme hardship to the alien, or the alien's "spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." 8 U.S.C. § 1254(a)(1). Even if these prerequisites are satisfied, however, it remains in the discretion of the Attorney General to decide whether to suspend deportation. *INS v. Rios–Pineda*, 471 U.S. 444, 105 S.Ct. 2098, 2100, 85 L.Ed.2d 452 (1985). The Attorney General, as authorized by Congress, 8 U.S.C. § 1103, has delegated the authority and discretion to suspend deportation to special inquiry officers, or immigration judges, whose decisions are subject to review by the BIA. 8 CFR §§ 242.8, 242.21 (1985).

■ The burden is on the alien to demonstrate both statutory eligibility and equities meriting favorable exercise of the discretion vested in the Attorney General. *Bueno–Carrillo v. Landon*, 682 F.2d 143, 145 (7th Cir.1982). The Supreme Court has recognized that if the Attorney General decides relief should be denied as a matter of discretion, the statutory eligibility requirements need not be addressed. *Rios–Pineda*, 105 S.Ct. at 2102. Here, however, the application for suspension of deportation was denied for failure to satisfy statutory eligibility requirements, and thus, our role

is different from that of this Court in *Achacoso–Sanchez v. INS*, 779 F.2d 1260 (7th Cir.1985), which reviewed a BIA decision made on purely discretionary grounds. Framing his petition accordingly, Hernandez–Patino contends the BIA decision finding a lack of continuous presence for seven years was not supported by substantial evidence and the decision finding a lack of extreme hardship was an abuse of discretion. This Court need only address the extreme hardship issue to affirm the decision of the BIA and dismiss the petition.

## III

■ As a preliminary matter, we note that rules and constitutional constraints do exist and that review of the BIA's consideration of the extreme hardship issue is by the abuse of discretion standard. This Court has said that an abuse of discretion arises when a decision

> was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group.

*Achacoso–Sanchez*, 779 F.2d at 1265. A sudden change in the *rules* the BIA uses constitutes an "unexplained departure," *Achacoso–Sanchez*, 779 F.2d at 1266, and "[a]ction on the basis of a falsehood is action 'without a rational explanation.'" 779 F.2d at 1266. The BIA "must consider all relevant factors in making its determination," *Diaz–Salazar v. INS*, 700 F.2d 1156, 1159 (7th Cir.1982), and "in the aggregate, not in isolation." *Bueno–Carrillo*, 682 F.2d at 146 n. 3.

As this Court has declared, "[t]he scope of 'extreme hardship' is not self-explanatory," *Bueno–Carrillo*, 682 F.2d at 145, although the inclination is to construe the words "narrowly." 682 F.2d at 145 (citing *INS v. Jong Ha Wang*, 450 U.S. 139, 144, 101 S.Ct. 1027, 67 L.Ed.2d 123 (1981)). The present suspension of deportation provision is the product of nearly fifty years of "modern" legislation, before which no authority existed for doing anything but deporting an illegal alien. *See INS v. Chadha*, 462 U.S. 919, 103 S.Ct. 2764, 77

L.Ed.2d 317 (1983). Legislation in 1940 authorized suspension of deportation upon a showing of "serious economic detriment." Viewing this standard to be too lenient, framers of the 1952 Act restricted the availability of suspension only to a person whose deportation would, in the opinion of the Attorney General, result in "exceptional and extremely unusual hardship." In 1962, the statute was again amended, authorizing suspension upon a showing of "extreme hardship." However, unlike the 1952 revision, the present language was substituted sans clarification, without any expressed intention of either restricting or loosening the remedy.

Petitioner cites this Court's footnote in *Bueno–Carrillo*, hoping to glean some support for his argument that in the 1962 amendment Congress intended to eradicate the notion of "unique" hardship from the hardship requirement. The hardship need be "extreme" but not "significantly different" or "unusual" according to the petitioner and, therefore, less weight need be accorded comparable deportation cases with similar facts but unfavorable results. In *Bueno–Carrillo* we noted:

> Under the statutory predecessor of § 244, suspension of deportation was to be granted where the alien was able to demonstrate "exceptional and extremely unusual hardship" to himself or his spouse, parent, or child who was a citizen or a lawful permanent resident alien. Immigration and Nationality Act of 1952, § 244(a)(1), Pub.L. 82–414, 66 Stat. 214. The relief was intended to be limited to situations where the hardship would be unusual and where deportation would be unconscionable. S.Rep. No. 1137, 82d Cong., 2d Sess. 25 (1952). In 1962 the requirement of "exceptional and extremely unusual hardship" was amended to the current requirement of "extreme hardship." Act of Oct. 24, 1962, Pub.L. No. 87–885, § 4, 76 Stat. 1248.

682 F.2d at 145 n. 1.

The Supreme Court, likewise, has taken note of the evolving suspension provision. *INS v. Phinpathya*, 464 U.S. 183, 191 n. 9, 104 S.Ct. 584, 590 n. 9, 78 L.Ed.2d 401 (1984). But nowhere do we find concrete support for the proposition that the amendment of "exceptional and extremely unusual" to merely "extreme" hardship entails a broadening of the remedy, much less a departure from norms established by the BIA and approved by the courts. These norms require comparisons of like applications for relief. It is through this means the BIA avoids reaching arbitrary results. Besides, it is not clear how, if it is supposed that the petitioner is not required to show "unique" hardship, the BIA is then precluded from considering relative claims. We need not now gratuitously extract from ambiguity a construction not warranted by the language or legislative history of the statute.

The better view may be to accept the fact that Congress, in refusing to define "extreme" hardship fully, avoided the substantive policy decision and has deferred to agency expertise. Given the power to define extreme hardship, the BIA need merely follow established procedures, support conclusions with evidence and articulate reasons for its decision. *See Hernandez–Cordero v. INS*, 819 F.2d 558 (5th Cir. 1987).

When confronted with ambiguous legislation, prudential considerations alone should cause some hesitation for courts in these circumstances, as the Supreme Court has remarked:

> While agencies are not directly accountable to the people, the Chief Executive is, and it is entirely appropriate for this political branch of the Government to make such policy choices—resolving the competing interests which Congress itself either inadvertently did not resolve, or intentionally left to be resolved by the agency charged with the administration of the statute in light of everyday realities.

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 865–66, 104 S.Ct. 2778, 2792–93, 81 L.Ed.2d 694 (1984). We cannot accept the petitioner's invitation to read in the statute what is not there.

## IV

Hernandez–Patino contends that the BIA abused its discretion in not considering the hardship factors individually and cumulatively. He asserts deportation would cause extreme hardship, both economic and emotional, for him and his family. He has alleged that his three U.S. citizen children presently receive a quality public education that is unavailable to them in Mexico. Moreover, his Mexican-born son, allegedly hearing-impaired, would suffer from the absence of special educational opportunities likely to exist in Mexico, but which are presently enjoyed in this country. Petitioner attempted to demonstrate that his life upon return to Mexico would be one of destitution. Housing, water, electricity and health care would be inadequate. Food stamps would not be available to sustain the health of his children. Most gravely, Hernandez–Patino claims he would not be able to secure steady employment other than subsistence-level seasonal sharecropping.

This Court has been presented with similar facts on prior occasions. *Marquez–Medina v. INS*, 765 F.2d 673 (7th Cir.1985); *Diaz–Salazar v. INS*, 700 F.2d 1156 (7th Cir.), *cert. denied*, 462 U.S. 1132, 103 S.Ct. 3112, 77 L.Ed.2d 1367 (1983); *Bueno–Carrillo v. Landon*, 682 F.2d 143 (7th Cir. 1982). Bueno–Carrillo lived in Illinois with his undocumented wife and four children, and one U.S. citizen child. He earned $200 weekly washing dishes in a restaurant. He claimed he had neither skills nor education, and deportation would result in extreme hardship to both himself and his U.S. citizen daughter since he was virtually unemployable in Mexico. In affirming the BIA decision to deny his application to suspend deportation, this Court stated in part that "[i]t is only when other factors such as advanced age, illness, family ties, etc., combine with economic detriment that deportation becomes an extreme hardship." *Bueno–Carrillo*, 682 F.2d at 146.

Diaz–Salazar lived in Chicago where he held a good job and had two young U.S. citizen children. He claimed he lacked formal education and, therefore, would not be able to find suitable employment if deported to Mexico. In dismissing the petition for review of a motion to reopen the proceedings, this Court determined Diaz–Salazar failed to demonstrate any extreme hardship since his situation was "not distinguishable from the conditions surrounding a substantial number of similar deportations." *Diaz–Salazar*, 700 F.2d at 1160 n. 4.

Marquez–Medina lived in this country with his "non-citizen family" and his young U.S. citizen daughter. He was employed but claimed he possessed only limited general skills and education, thus restricting any opportunity for employment in Mexico. He also claimed his citizen daughter would suffer irreparable hardship from her de facto deportation. In dismissing the petition for review of a motion to reopen, this Court emphasized both that "[a]n illegal alien cannot gain a favored status merely by birth of a citizen child," and reliance on "general economic conditions in Mexico, not on any condition or circumstance unique" to Marquez–Medina, render his claim insufficient. *Marquez–Medina*, 765 F.2d at 676.

The evidence here resembles that of the other cases previously considered by this Court. Moreover, in reaching its decision the BIA enumerated a number of hardship factors it considered: "age of the subject; family ties in the United States; condition of health; conditions in the country to which the alien is returnable—economic and political; financial status—business and occupation; the possibility of other means of adjustment of status; and immigration history." Ultimately, the BIA declared that

> financial hardship, although a relevant factor, is not sufficient to justify a grant of relief in the absence of substantial additional equities ... [and] readjustment of an alien to life in his native country after having spent a number of years in the United States is not the type of hardship to be characterized as extreme.

Having considered all of the factors presented, "both individually and cumulatively," the BIA concluded that Hernan-

dez–Patino failed to satisfy the extreme hardship requirement for suspension of deportation. The BIA's consideration of arguments constitute, we believe, a "rational explanation" for its decision, and a review of prior decisions reveals that in this case the BIA has neither "inexplicably departed from established policies" nor grounded its decision on "invidious discrimination." We reject petitioner's argument that the BIA failed to adequately consider the hardship factors. Hernandez–Patino has alleged foreseeable economic deprivation caused by only seasonal employment and lack of available family assistance. He also anticipates emotional grief stemming from the changed lives of his children. We must not require the BIA to embark on an "exegesis on every contention." *Osuchukwu v. INS,* 744 F.2d 1136, 1142 (5th Cir.1984). We are satisfied the BIA fully considered the petitioner's claims. The "other factors," *Bueno–Carrillo,* 682 F.2d at 146, such as advanced age, illness or family ties, are simply not present, making the petitioner's plight indistinguishable from "a substantial number of similar deportations." *Diaz–Salazar,* 700 F.2d at 1160 n. 4.

Our ruling finds ample support in the decisions of other courts. The Ninth Circuit has said "[e]conomic disadvantage alone does not constitute 'extreme hardship.'" *Ramirez–Durazo v. INS,* 794 F.2d 491, 498 (9th Cir.1986). The difficulty of readjustment to a lower standard of living and the stark reality of reduced employment and educational opportunities can be alleviated, in the view of the court, with the assistance of the many relatives living in Mexico and by the fact that the petitioner's family speaks Spanish, easing their transition into Mexican society and schools. 794 F.2d at 498.

Moreover, the Fifth Circuit has denied relief to a thirty-four year old native of Mexico and his family, including a U.S. citizen 10–year old daughter, since the petitioner's experience as a school teacher suggests he could find employment, the family is in good health, speaks Spanish and has relatives in Mexico to provide moral and financial support. *Luciano–Vincente v. INS,* 786 F.2d 706 (5th Cir.1986).

## V

National sovereignty itself may be defined in terms of controlling territorial borders; the Supreme Court has "long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." *Shaughnessy v. United States ex rel. Mezei,* 345 U.S. 206, 210, 73 S.Ct. 625, 628, 97 L.Ed. 956 (1953). Congress has delegated its authority to make a policy judgment. The BIA, the delegate of the Attorney General in which rests the discretion to administer the provisions of the deportation statute, has exercised its discretion to decide that the financial hardship resulting from dislocation out of the U.S., without more, is not an adequate reason for suspending deportation. Courts must defer to the judgment. *Jong Ha Wang,* 450 U.S. at 144, 101 S.Ct. at 1031. The wisdom of this "policy" might be judged against the background of the thousands of aliens attempting legal immigration through the quota system, and the many others asserting ideological persecution in political asylum cases. We are not required to do so much today. Rather, having found no abuse of discretion, we sustain the decision of the BIA.