Alfredo **RODRIGUEZ–BARAJAS,**
Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE,**
Respondent.

No. 92–2939.

United States Court of Appeals,
Seventh Circuit.

Argued April 2, 1993.
Decided April 16, 1993.

Robert D. Ahlgren (argued), Ahlgren & Blumenfeld, Chicago, IL, for petitioner.

Fred Foreman, U.S. Atty., Criminal Div., Chicago, IL, William J. Howard (argued), David J. Kline, William P. Barr, Dept. of Justice, Office of Immigration Litigation, Washington, DC, Samuel Der–Yeghiayan, I.N.S., Chicago, IL, for respondent.

Before POSNER and EASTERBROOK, Circuit Judges, and TIMBERS, Senior Circuit Judge.*

* Hon. William H. Timbers, of the Second Circuit,    sitting by designation.

EASTERBROOK, Circuit Judge.

Alfredo Rodriguez–Barajas entered the United States in 1971 on a tourist visa. He did not depart when the visa expired, and he did not obey the law limiting employment in the United States to those with appropriate visas. Rodriguez married a citizen of the United States in December 1971. He used this marriage to obtain a visa authorizing permanent residence, and employment, in the United States. He reentered, on the strength of this visa, in March 1972 and has remained, with brief exceptions, ever since. But the marriage was phony. Rodriguez paid $500 for a ceremony and support in obtaining a visa. He never lived with his "wife," whom he later divorced in order to marry Vitaelva Jimenez, a citizen of Mexico.

Rodriguez and Jimenez have two children: Jorge, born in the United States in 1978, and Maria, born in Mexico in 1980. Rodriguez, his wife, and his son went to Mexico in 1979 to attend Rodriguez's ill father. In 1980 Rodriguez returned to the United States alone. His wife remained with her family while awaiting the birth of their second child; Jorge stayed behind with his mother. Shortly after his return, Rodriguez asked the Immigration and Naturalization Service to permit his family to join him in the United States. During an interview that was part of this process, Rodriguez admitted that the marriage in 1971, which served as the basis of his own residence, was a sham. The INS not only denied the request to permit his wife and daughter to enter (Jorge, as a citizen of the United States, is free to enter at any time) but also commenced deportation proceedings against Rodriguez. At the time, Rodriguez was 31. Today he is 44, and the end is not in sight.

Conceding that he had procured his visa by fraud, Rodriguez asked for relief under § 241(f) of the Immigration and Nationality Act, 8 U.S.C. § 1251(f) (1988 ed.), which between 1981 and 1991 permitted the Attorney General to "waive" the deportation of an alien who is a parent of an American citizen. Until 1981 this statute would have done Rodriguez no good. *Reid v. INS*, 420 U.S. 619, 95 S.Ct. 1164, 43 L.Ed.2d 501 (1975), held that the version then in force did not apply to aliens who got visas by fraud or worked in the United States without proper certification. Rodriguez had done both. But in December 1981, six months after the INS began deportation proceedings against him, Congress amended § 241(f) to give the Attorney General discretion to forgive additional wrongs, including the kinds Rodriguez had perpetrated. Pub.L. 97–116, 95 Stat. 1611. The 1981 amendments apply to pending cases. In 1990 Congress repealed § 241(f), Pub.L. 101–649, 104 Stat. 4978, leaving a residue in 8 U.S.C. § 1251(a)(1)(H) (1992 ed.), but these changes do not apply to pending cases, so we must deal with the statute in force until March 1, 1991.

■ Discretion is not compulsion. The Attorney General has a choice to make, and courts review discretionary choices under the immigration laws with great deference. E.g., *INS v. Elias–Zacarias*, —— U.S. ——, ——, 112 S.Ct. 812, 817, 117 L.Ed.2d 38 (1992); *INS v. Jong Ha Wang*, 450 U.S. 139, 144–45, 101 S.Ct. 1027, 1031, 67 L.Ed.2d 123 (1981); *Achacoso–Sanchez v. INS*, 779 F.2d 1260, 1265 (7th Cir.1985). It is not important to settle on some linguistic formula. Different circuits have invoked different phrases to describe the scope of judicial review of decisions under § 241(f). See *Williams v. INS*, 773 F.2d 8, 9 (1st Cir.1985); *Liwanag v. INS*, 872 F.2d 685, 687 (5th Cir.1989) (in banc); *Balani v. INS*, 669 F.2d 1157, 1161 (6th Cir.1982); *Bae v. INS*, 706 F.2d 866, 869 (8th Cir.1983); *Vargas v. INS*, 831 F.2d 906, 908 (9th Cir.1987). Slogans are more likely to mislead than to enlighten. No linguistic algorithm can turn facts into a decision. Every circuit believes that review is deferential. All that matters in daily adjudication, and all that matters here, is a recognition that the Attorney General exercises a delegated power. What sort of standard to use (strict versus lenient) and how to apply it to individual aliens are in her hands. The judicial role lies in policing the boundaries of the statutory delegation and in assuring that discretion within the scope of that delegation is exercised in a reasoned way.

■ An immigration judge held a hearing and, in the name of the Attorney General, exercised discretion in Rodriguez's favor.

That decision came in December 1985. The INS, also in the name of the Attorney General, took an appeal to the Board of Immigration Appeals, which, in the name of the Attorney General, exercised discretion against Rodriguez. The BIA rendered its decision in July 1992 and did not explain the delay of almost seven years. According to the Board, Rodriguez's residence of long duration and steady employment are points in his favor, but the fraud used to procure the visa is a black mark. What the Board thought tipped the scales is his family's presence in Mexico. Deportation would reunite the family, and Rodriguez, who "speaks his native language, ... should have no problems in adjusting to life in Mexico." Section 241(f) is designed to keep families together by preventing the expulsion of one member, *INS v. Errico*, 385 U.S. 214, 220, 87 S.Ct. 473, 477, 17 L.Ed.2d 318 (1966), so the location of Rodriguez's family is a legitimate, indeed vital, desideratum.

■ According to Rodriguez, the BIA should not have used his family's location as a tiebreaker because there is no tie to break. All of the equities except the unauthorized work and fraudulent marriage are on his side. And because § 241(f) does not come into play unless the alien procures entry by fraud, Rodriguez insists, it is double counting to use that event against him. He misreads the statute, which says only that the existence of fraud is not dispositive against an applicant. It covers many kinds of misconduct. Section 241(f)(1) applied before its repeal to "aliens who have sought to procure or have procured visas or other documentation, or entry into the United States, by fraud or misrepresentation, whether willful or innocent". Willful fraud is one pole, innocent misrepresentation another. Both fall within § 241(f), and only a foolish decisionmaker would treat the two alike when deciding who should remain in the United States. Rodriguez committed a willful fraud. The BIA, as the ultimate holder of the Attorney General's power of dispensation, did not exceed statutory bounds in taking the circumstances of Rodriguez's marriage and visa into account.

■ While the Board had the appeal under advisement, Congress changed many provisions of the immigration laws. Among these is one establishing what has come to be called "registry." See generally *Mrvica v. Esperdy*, 376 U.S. 560, 84 S.Ct. 833, 11 L.Ed.2d 911 (1964). An alien present in the United States for long enough is eligible to remain without regard to the limits of the many other statutory exceptions. Until the Immigration Reform and Control Act of 1986, "long enough"·meant "since 1948." In 1986 Congress changed that to "since 1972." Pub.L. 99-603, 100 Stat. 3359. An alien who entered the United States before January 1, 1972, has made this nation his residence continuously since then, is of good moral character, and is eligible for citizenship, may remain. Section 249, 8 U.S.C. § 1259. This change applies to pending cases, and Rodriguez asked the Board to give him the benefit of registry.

■ The Board's reply is baffling. Its full treatment reads: "Finally, the respondent requests that the record be remanded in order for the immigration judge to grant relief under section 249 of the Act, 8 U.S.C. § 1259. However, we note that since the respondent entered the United States after January 1, 1972, he is not eligible for registry." If the BIA meant this as a statement of fact, it is not supported by substantial evidence. The INS concedes that Rodriguez "entered" the United States in 1971 and went through a marriage ceremony in Chicago at the end of December 1971. He paid federal and state taxes on his 1971 income. If the BIA meant that Rodriguez has not remained here continuously since January 1, 1972, it is correct on the facts—he made a brief trip to Mexico to obtain a visa in 1972 and a longer trip to Mexico in 1979–80—but wrong on the law. Section 249 requires continuous *residence* in the United States, not continuous *presence* here.

■ The INS does not defend the Board's analysis; indeed it does not mention the Board's analysis. Instead it insists that "substantial evidence" supports a decision that Rodriguez did not establish residence in the United States until 1972. Of course the BIA made (at least, wrote down) no such decision, and in reviewing administrative orders we review the agency's stated reasons,

not counsel's rerationalizations. *SEC v. Chenery Corp.*, 318 U.S. 80, 88, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943). The Board's order cannot be sustained.

■ Whether we should remand, or instead instruct the Board to find Rodriguez eligible for registry, is a harder question. Remand would be a waste of time if any decision against Rodriguez would have to be set aside. Entry, employment, and marriage during 1971 strongly suggest residence here before January 1, 1972. Why did Rodriguez pay $500 and try to hoodwink the INS if not to cement his entitlement to remain in his chosen residence? No one contends that the trips to Mexico in 1972 and 1979–80 show residence in that nation; and if Rodriguez was not residing in Mexico, he must have been residing in the United States. (He was neither a vagabond nor a globetrotter lacking a fixed residence.) Still, we do not think that the BIA would exceed its powers if it were to draw different inferences. It might conclude that Rodriguez was a transient in 1971, planning to take up residence here only after returning from Mexico with his visa. Perhaps the record contains other evidence, to which the parties have not alerted us, that bears on the question. Remand, the normal course, *South Prairie Construction Co. v. Operating Engineers*, 425 U.S. 800, 806, 96 S.Ct. 1842, 1845, 48 L.Ed.2d 382 (1976), therefore is apt here.

The Board's decision is vacated, and the case is remanded for further consideration of Rodriguez's application for registry. We urge the Board to act with dispatch in light of the unconscionable delay that Rodriguez and his family have endured so far.