William PALMER, Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

No. 92–2667.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 28, 1993.

Decided Aug. 26, 1993.

Robert D. Ahlgren (argued), Ahlgren & Blumenfeld, Chicago, IL, for petitioner.

Fred Foreman, U.S. Atty., Office of U.S. Atty., Crim. Div., Chicago, IL, William J. Howard, David J. Kline, Dept. of Justice, Office of Immigration Litigation, Richard L. Thornburg, U.S. Atty. Gen., Washington, DC, A.D. Moyer, Samuel Der–Yeghiayan, I.N.S., Chicago, IL, Anne C. Arries (argued), U.S. Dept. of Justice, Civ. Div. Immigration Litigation, Washington, DC, for respondent.

Before RIPPLE and KANNE, Circuit Judges, and WOOD, Jr., Senior Circuit Judge.

KANNE, Circuit Judge.

William Palmer petitions for review of an order of the Board of Immigration Appeals (BIA) denying his applications for relief from deportation under §§ 245 and 249 of the Immigration and Nationality Act, 8 U.S.C. §§ 1255 and 1259. For the reasons set forth in this opinion, we deny the petition for review and affirm the decision of the BIA.

## I.

Palmer, a native and citizen of Canada, was born in 1923. He unsuccessfully attempted to enter the United States in 1950 and again in 1951. The 1951 exclusion was based on his conviction in Canada for fraud [1]

---

1. In 1951, Palmer was convicted of defrauding an automobile mechanic of $300. He was sen-

as well as the failure to obtain a visa entitling him to immigrate. He returned to this country within a few days of being excluded in 1951 and, with the exception of two brief visits to Canada, has resided here since that time. In 1956, he married an American citizen; he has four children, all born in the United States. Palmer and his wife divorced in 1979. In March 1986, he pleaded guilty in Illinois criminal court to contributing to the sexual delinquency of a child, a misdemeanor under Ill.Rev.Stat. ch. 38, para. 11–5,[2] and was sentenced to one year of probation and fined $1,000.

In April 1986, the Immigration and Naturalization Service (INS) issued an order to show cause charging Palmer with being deportable because he had entered the United States without a valid immigrant visa. Sections 212(a)(20) and 241(a)(1), 8 U.S.C. §§ 1182(a)(20), 1251(a)(1). In May 1987, the INS filed a second charge of deportability on the ground that, in 1951, Palmer had sought (and achieved) admission to the country without the Attorney General's permission within one year of having been excluded. Section 212(a)(16), 8 U.S.C. § 1182(a)(16).[3] During deportation proceedings before the immigration judge (IJ), Palmer admitted the factual allegations in both show cause orders and conceded deportability on both charges.

■ In an effort to escape deportation, Palmer then sought relief from the IJ under §§ 245 and 249 of the INA, 8 U.S.C. §§ 1255 and 1259. Section 245(a) provides that the Attorney General may, in her discretion, adjust the status of an alien inspected and admitted or paroled into the United States to that of an alien lawfully admitted for permanent residence if: (1) the alien applies for such adjustment, (2) he is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.[4] An alien in Palmer's position, that is, subject to deportation proceedings, may apply to the IJ for adjustment of status. *See* 8 C.F.R. § 242.17(a); *Matter of Alarcon,* —— I. & N. Dec. ——, Int. Dec. 3184 (BIA 1992). *See also Patel,* 811 F.2d at 379. An alien seeking to adjust his status to that of a lawful permanent resident is assimilated to the position of an applicant for entry into the United States. *Pei–Chi Tien v. INS,* 638 F.2d 1324, 1326 (5th Cir.1981); *Yui Sing Tse v. INS,* 596 F.2d 831, 834 (9th Cir.1979); *Matter of Alarcon,* —— I. & N. Dec. at ——, Int.Dec. 3184; *Matter of Hernandez–Puente,* —— I. & N. Dec. ——, Int.Dec. 3135 (BIA 1991).

■ The IJ found that a visa was available to Palmer, based on an immediate relative petition filed by his son, and that Palmer had been inspected at the time of his last entry into the United States (sometime in 1981 or

tenced to six months of probation, which was suspended, and ordered to pay $16 in court costs.

2. At the time, the statute provided, in part:

(a) Any person of the age of 14 years and upwards who performs or submits to any of the following acts with any person under the age of 18 contributes to the sexual delinquency of a child:
  (1) Any act of sexual intercourse; or
  (2) Any act of deviate sexual conduct; or
  (3) Any lewd fondling or touching of either the child or the person done or submitted to with the intent to arouse or to satisfy the sexual desires of either the person or the child or both....

3. The Immigration Act of 1990, Pub.L. 101–649, 104 Stat. 4978 (1990) redesignated, and in some cases revised, the subsections specifying grounds upon which an alien may be excluded and deported from the United States. Former § 241(a)(1), which provides that an alien excludable at the time of entry is subject to deportation, has been redesignated as 8 U.S.C. § 1251(a)(1)(A). Former §§ 212(a)(16), under which an alien is excludable if he seeks admission to the United States without the permission of the Attorney General within one year of being previously excluded, has been redesignated as 8 U.S.C. § 1182(a)(6)(A). Finally, former § 212(a)(20), under which an alien is excludable if, at the time he applies for admission, he is not in possession of a valid immigrant visa, has been redesignated as 8 U.S.C. § 1182(a)(7)(A).

4. By its terms, § 245 commits the decision whether or not to grant an application for adjustment of status to the discretion of the Attorney General. However, the Attorney General may delegate her discretionary authority to make such decisions. *Patel v. INS,* 811 F.2d 377, 382 n. 10 (7th Cir.1987). She has delegated the power to determine petitions for adjustment of status to immigration judges subject to review by the BIA. *See* 8 C.F.R. §§ 242.8 and 242.21.

1982). The sole remaining issue was whether Palmer was "admissible to the United States for permanent residence," 8 U.S.C. § 1255(a), in light of the stricture contained in § 212(a)(9), 8 U.S.C. § 1182(a)(9).[5] Under § 212(a)(9), an alien who has been convicted of a crime involving moral turpitude "shall be ineligible to receive [a] visa[ ] and shall be excluded from admission into the United States." Palmer was convicted of two such crimes: the 1951 fraud conviction,[6] and the 1986 conviction for contributing to the sexual delinquency of a child.[7]

Consequently, in order to remain eligible for adjustment of status, Palmer had to seek a waiver of inadmissibility from the IJ under § 212(h) of the INA, 8 U.S.C. § 1182(h).[8] At the time of the hearing before the IJ, § 212(h) provided that the Attorney General may, in her discretion, waive inadmissibility under § 212(a)(9) for any alien who was the spouse or parent of a United States citizen, if (1) the alien established that his exclusion "would result in extreme hardship" to the United States citizen spouse or child, and (2) the alien's admission would not be contrary to the national welfare, safety, and security of the United States. *See Matter of Ngai*, 19 I. & N. Dec. 245, 247 (Comm.1984) (a waiver

of inadmissibility as a result of § 212(a)(9) depends first upon a showing that the bar to admission imposes an extreme hardship on a qualifying family member).[9] In August 1987, the IJ granted both the § 212(h) waiver and Palmer's application for adjustment of status under § 245.[10] As a result, the IJ did not reach Palmer's request for relief under § 249.

The INS appealed to the BIA. In an opinion and order issued in May 1992, the BIA reversed the IJ's decision, holding that Palmer had not established "extreme hardship" within the meaning of § 212(h), and did not merit relief under either § 245 or § 249 in the exercise of the Attorney General's discretion. The opinion begins by reviewing recent changes to § 212(h) under the Immigration Act of 1990 as well the Miscellaneous and Technical Immigration and Naturalization Amendments of 1991, Pub.L. 102–232, 105 Stat. 1733 (1991). The BIA determined that, under the amended version of § 212(h), Palmer was still required to demonstrate his eligibility for a favorable exercise of the Attorney General's discretion by establishing that his children would suffer extreme hardship if he were deported. *See* 8 U.S.C. § 1182(h)(1)(B).[11]

---

**5.** Under the Immigration Act of 1990, 8 U.S.C. § 1282(a)(9) has been revised and redesignated as 8 U.S.C. § 1182(a)(2)(A).

**6.** Crimes in which fraud is an ingredient are regarded as involving moral turpitude. *See Jordan v. De George*, 341 U.S. 223, 229–32, 71 S.Ct. 703, 706–08, 95 L.Ed. 886 (1951); *Lozano–Giron v. INS*, 506 F.2d 1073, 1076 (7th Cir.1974); *Miller v. United States INS*, 762 F.2d 21, 23 (3d Cir.1985); *McNaughton v. INS*, 612 F.2d 457, 459 (9th Cir.1980) (per curiam); *Matter of Bader*, 17 I. & N.Dec. 525, 528–29 (BIA 1980).

**7.** Because Palmer had been convicted of two crimes involving moral turpitude, he was not eligible for the petty offense exception to excludability found in § 212(a)(9).

**8.** Although § 212(h) speaks to the admission of an alien, the BIA has determined that it is also available to an alien present in the United States who applies for adjustment of status under § 245. *De Lucia v. INS*, 370 F.2d 305, 308 n. 2 (7th Cir.1966), *cert. denied*, 386 U.S. 912, 87 S.Ct. 861, 17 L.Ed.2d 784 (1967); *Osuchukwu v. INS*, 744 F.2d 1136, 1139 (5th Cir.1984); *Matter of Alarcon*, —— I. & N.Dec. at ——, Int.Dec. 3184; *Matter of Goldeshtein*, —— I. & N.Dec.

——, Int.Dec. 3158 (BIA 1991); *Matter of Parodi*, 17 I. & N.Dec. 608, 611–12 (BIA 1980).

**9.** Section 212(h), by its terms, makes no provision for the hardship that inures to an alien by reason of his exclusion. Accordingly, such hardship is not a factor that may be considered. *Matter of Shaughnessy*, 12 I. & N.Dec. 810, 813 (BIA 1968).

**10.** The IJ's opinion made no express finding as to the extreme hardship element of § 212(h).

**11.** At the time the BIA considered his application for adjustment of status, Palmer remained an individual seeking to enter the United States as a lawful permanent resident. *See Matter of Alarcon*, —— I. & N.Dec. at ——, Int.Dec. 3184. "An application for admission to the United States is a continuing application, and admissibility is determined on the basis of the facts and the law at the time the application is finally considered [by the BIA]." *Id.* (citations omitted). Accordingly, the BIA applied the most recent version of § 212(h) in rendering its decision. Although § 212(h) was amended in certain respects by the 1990 Act and the 1991 Amendments, these changes had no effect on the issue in his case.

Turning to the merits, the BIA held that Palmer had failed to establish this statutory element. It noted that Palmer's children had submitted affidavits attesting to their close relationship with their father, but found the children to be self-sufficient adults, ranging in age from 27–34 years. In particular, Palmer's son had held the same job for the last five years and earns an annual salary of $30,000. Three of the children are married and have children of their own. While separation from their father may cause the children emotional hardship, the BIA concluded that this did not amount to extreme hardship under § 212(h).

The BIA went on to conclude that Palmer would not otherwise merit a § 212(h) waiver in the exercise of discretion. In Palmer's favor, the BIA considered his residence of forty years in the United States, his stable employment history, and his regular payment of taxes. However, in the BIA's view, these factors did not overcome Palmer's 1986 conviction for contributing to the sexual delinquency of a child. The BIA noted that, at his deportation hearing before the IJ, Palmer explained that he had been accused by a former girlfriend of fondling her six-year old daughter after he had refused to give the woman money to buy a home. Palmer decided to plead guilty to the misdemeanor charge in order to avoid adverse publicity that could damage his business and his family. The BIA held, however, that Palmer could not use the circumstances surrounding the charge to impeach an otherwise valid conviction. In light of "the recency and the serious nature" of the crime, the BIA stated that it would decline to exercise its discretion favorably under § 212(h), and denied Palmer's application for adjustment of status.

The BIA next considered Palmer's application for admission or "registry" under § 249, 8 U.S.C. § 1259. This provision permits the Attorney General, in her discretion, to establish a record of lawful admission for an alien who has been present in the United States for a prescribed period of time, making the individual eligible to remain in the country.

Thus, under the 1992 version of § 212(h), as under the version in effect at the time of the IJ's decision in 1987, Palmer had to demonstrate

See *Rodriguez–Barajas v. INS*, 992 F.2d 94, 97 (7th Cir.1993); *De Lucia*, 370 F.2d at 307–08. The alien "shall satisfy the Attorney General that he is not inadmissible under section 212(a) ... insofar as it relates to criminals, procurers and other immoral persons," and must establish that he entered the United States before January 1, 1972, has made this nation his residence continuously since then, is of good moral character, and is eligible for citizenship. The BIA concluded that, for the reasons Palmer did not merit discretionary relief under § 212(h), he would not be granted discretionary relief under § 249. The BIA did, however, find that Palmer was statutorily eligible for voluntary departure under § 244(e) of the INA, 8 U.S.C. § 1254(e), and granted him such in the exercise of discretion.

Palmer filed a timely petition for review of the BIA's decision. We have jurisdiction under § 106(a) of the INA, 8 U.S.C. § 1105a(a). *Oviawe v. INS*, 853 F.2d 1428, 1430 (7th Cir.1988).

## II.

■ The BIA's determination that Palmer failed to demonstrate his children would suffer extreme hardship if he were deported is reviewed for abuse of discretion. *Hassan v. INS*, 927 F.2d 465, 467 (9th Cir.1991); *Osuchukwu*, 744 F.2d at 1140. Our examination "is limited to whether the discretion was actually exercised and whether it was exercised in an arbitrary and capricious manner." *Garcia–Lopez v. INS*, 923 F.2d 72, 74 (7th Cir.1991). *See also Foti v. INS*, 375 U.S. 217, 228, 84 S.Ct. 306, 313, 11 L.Ed.2d 281 (1963). Accordingly, the BIA's decision on this issue will be upheld unless it was without rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group. *Esposito v. INS*, 936 F.2d 911, 915 (7th Cir.1991); *Garcia–Lopez*, 923 F.2d at 74; *Hernandez–Patino v. INS*, 831 F.2d 750, 752 (7th Cir.1987); *Patel*, 811 F.2d at 382.

extreme hardship to his children in order to be eligible for a waiver of inadmissibility.

Aside from the statutory element of extreme hardship, a waiver of inadmissibility under § 212(h) also depends on a favorable exercise of discretion by the Attorney General. So too does relief from deportation under §§ 245 and 249. We review the BIA's decisions to deny discretionary relief to Palmer for abuse of discretion, of course, mindful that "courts review discretionary choices under the immigration laws with great deference." *Rodriguez–Barajas*, 992 F.2d at 96.

Palmer makes essentially three arguments. First, that he is eligible for a waiver of inadmissibility under § 212(h) because he has demonstrated that his children would suffer extreme hardship if he were deported. Second, that the BIA either failed to exercise discretion in denying the § 212(h) waiver, or that it exercised its discretion in an arbitrary and capricious manner. Third, that, notwithstanding his eligibility for a § 212(h) waiver and adjustment of status under § 245, the BIA abused its discretion by not reviewing his statutory eligibility for relief under § 249.

We find that Palmer's arguments do not require extended discussion. This case boils down to whether or not the BIA exercised its discretion to deny relief from deportation in a reasoned way. In denying Palmer's application for adjustment of status under § 245, the BIA found that he had failed to establish that his children would suffer extreme hardship under § 212(h) if he were deported. Alternatively, the BIA ruled that, the statutory requirement of extreme hardship aside, Palmer did not merit discretionary relief under § 212(h) because his 1986 conviction outweighed the equities in his favor.

In a case such as this, the alien bears the burden of demonstrating both statutory eligibility and equities meriting favorable exercise of the Attorney General's discretion.

*See Hernandez–Patino*, 831 F.2d at 752; *Bueno–Carrillo v. Landon*, 682 F.2d 143, 145 (7th Cir.1982). This circuit has not yet determined what constitutes "extreme hardship" under § 212(h). However, this phrase also appears in § 244(a)(1) of the INA, 8 U.S.C. § 1254(a)(1), which authorizes suspension of deportation,[12] and three other circuits have relied on interpretations of § 244(a)(1) to inform their analyses of § 212(h). *See Hassan*, 927 F.2d at 467–68; *Osuchukwu*, 744 F.2d at 1139–41; *Chiaramonte v. INS*, 626 F.2d 1093, 1100–01 (2d Cir.1980). The BIA has done the same. *See Matter of Shaughnessy*, 12 I. & N. Dec. at 813–14. We see no reason to construe "extreme hardship" under § 212(h) differently from how this and other courts have construed that phrase under § 244(a)(1).

The Supreme Court has held that the BIA has the authority to construe "extreme hardship" narrowly. *INS v. Wang*, 450 U.S. 139, 145, 101 S.Ct. 1027, 1031, 67 L.Ed.2d 123 (1981). *See also Hernandez–Patino*, 831 F.2d at 752; *Bueno–Carrillo*, 682 F.2d at 145. "The application of the 'extreme hardship' requirement is committed to the BIA and will not be overturned simply because we might prefer another interpretation of the statute." *Alvarez–Madrigal v. INS*, 808 F.2d 705, 707 (9th Cir.1987). Thus, while we require the BIA to consider the relevant factors in the aggregate, rather than in isolation, *Bueno–Carrillo*, 682 F.2d at 146 n. 3; *Hassan*, 927 F.2d at 467, we will not determine the weight to be afforded each factor. *Garcia–Lopez*, 923 F.2d at 74.

In general, "[e]xtreme hardship will not be found absent a showing of significant actual or potential injury." *Hassan*, 927 F.2d at 468. This means "*at least* hardship substantially different from and more severe

---

**12.** Title 8 U.S.C. § 1254(a)(1) provides, in part:

As hereinafter prescribed in this section, the Attorney General may, in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence, in the case of an alien ... who applies to the Attorney General for suspension of deportation and—

(1) is deportable under any law of the United States except the provisions specified in paragraph (2) of this subsection; has been

physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application, and proves that during all of such period he was and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence....

than that suffered by the ordinary alien who is deported." *Sanchez v. United States INS*, 755 F.2d 1158, 1161 (5th Cir.1985). Consequently, "[w]hen the potential hardships the alien may encounter are the same faced by any alien to be deported, the 'extreme hardship' standard has not been met." *Cortes–Castillo v. INS*, 997 F.2d 1199, 1204 (7th Cir.1993). *See also Diaz–Salazar v. INS*, 700 F.2d 1156, 1160 (7th Cir.), *cert. denied,* 462 U.S. 1132, 103 S.Ct. 3112, 77 L.Ed.2d 1367 (1983). While economic detriment is a factor to consider in any analysis of extreme hardship, *Marquez–Medina v. INS*, 765 F.2d 673, 676 (7th Cir.1985), economic disadvantage alone does not constitute extreme hardship. *Hernandez–Patino*, 831 F.2d at 755; *Diaz–Salazar*, 700 F.2d at 1160; *Mendoza–Hernandez v. INS*, 664 F.2d 635, 638 (7th Cir.1981). Likewise, separation of a child from his alien parent is not itself extreme hardship. *Osuchukwu*, 744 F.2d at 1142.

■ Under the standard for extreme hardship established by our cases and the cases of other circuits, it is clear that the BIA did not abuse its discretion by finding Palmer had failed to establish that his children would suffer extreme hardship if he were deported. The children are self-sufficient adults; the record does not indicate that they depend to any significant degree on financial assistance from their father. While separation from him will cause the children anxiety, this is not enough to justify a finding of extreme hardship. "General allegations of emotional hardship caused by severing family and community ties are a common result of deportation." *Marquez–Medina*, 765 F.2d at 675. *See Hernandez–Patino*, 831 F.2d at 754–55; *Sullivan v. INS*, 772 F.2d 609, 610–11 (9th Cir.1985).

■ Palmer suggests that the future financial burden to his children of caring for an elderly parent who lives in another country may be extreme. He points out that, while he has tentatively established some contact with a brother, he does not know the whereabouts of his other siblings or if he has nieces and nephews in Canada. However, Palmer does not claim, and there is there is nothing in the record to indicate, that he has depended on his children financially in the past, or that his care in the future would have been provided by his children under any circumstances. He lives alone. At the time of the deportation proceedings he was still working, despite having surpassed the age of retirement.

Palmer's age—approximately seventy—is perhaps the most important factor in determining the possibility of financial hardship to his children if he is deported from this country. The statute draws no distinction based on age, however, and we point out that this hardship would typically exist in almost every case in which a person of retirement age is deported. INS regulations provide a mechanism for aliens in Palmer's position to bring new evidence or changed circumstances to the attention of the BIA. Such evidence may be presented by filing a motion to reopen the case under 8 C.F.R. § 3.2. *See Sivaainkaran v. INS*, 972 F.2d 161, 166 (7th Cir.1992); *Kaczmarczyk v. INS*, 933 F.2d 588, 597 (7th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 583, 116 L.Ed.2d 608 (1991).[13]

To the best of our knowledge, Palmer has not filed a motion to reopen in order to submit evidence that his financial condition or health has taken a turn for the worse. Thus, on the record before us, the possibility that future care for their father would result

---

**13.** 8 C.F.R. § 3.2 provides, in part:

Reopening or reconsideration of any case in which a decision has been made by the [BIA], whether requested by the Commissioner or any other duly authorized officer of the [INS], or by the party affected by the decision, shall be only upon written motion to the [BIA]. Motions to reopen in deportation proceedings shall not be granted unless it appears to the [BIA] that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing; nor shall any motion to reopen

for the purpose of affording the alien an opportunity to apply for any form of discretionary relief be granted if it appears that the alien's right to apply for such relief was fully explained to him and an opportunity to apply therefor was afforded him at the former hearing unless the relief is sought on the basis of circumstances which have arisen subsequent to the hearing....

We point out that a motion to reopen does not automatically stay a deportation order. *Id.* § 3.8(a); *Castaneda–Suarez v. INS*, 993 F.2d 142, 145 (7th Cir.1993).

in extreme hardship to the children is speculative. "The burden of proof in ... [this] proceeding lies with the applicant, and while an analysis of a given application includes a review of all claims put forth in light of the facts and circumstances of a case, such analysis does not extend to discovery of undisclosed negative impacts." *Matter of Ngai,* 19 I. & N. Dec. at 247. We conclude that there has been no showing in this case of either present extreme hardship or extreme hardship that would result in the foreseeable future to Palmer's children by reason of his deportation. *See Matter of Shaughnessy,* 12 I. & N. Dec. at 813. We affirm the BIA's determination that Palmer failed to establish statutory eligibility for a § 212(h) waiver of inadmissibility.

### III.

We also think that the BIA's refusal to grant discretionary relief under § 212(h) was proper. Palmer contends that the BIA failed to exercise discretion because it placed inordinate weight on his 1986 conviction and did not sufficiently consider the circumstances surrounding that event. Alternatively, he argues that, for the same reasons, any exercise of discretion was arbitrary and capricious.

A review of the opinion demonstrates that the BIA considered the equities favoring Palmer: his lengthy residence in the United States, stable employment history, and payment of taxes. In addition, the BIA considered Palmer's testimony that he was charged with the crime of contributing to the sexual delinquency of a child by a former girlfriend to whom he had refused to lend money. Finally, the BIA noted that Palmer had pleaded guilty to the misdemeanor crime in order to avoid obloquy and protect his family and business. Nonetheless, having weighed these factors, the BIA concluded that they were not sufficient to overcome the conviction itself.

Palmer would have us consider anew that, at the time he refused his former girlfriend's request, she stated she would get the money "by hook or by crook." He also asks us to consider that he was originally charged with several counts of aggravated criminal sexual assault and aggravated criminal sexual abuse that, upon investigation, were dropped and subsequently replaced with a single misdemeanor count of contributing to the sexual delinquency of a child. Finally, he points out that the sentencing court allowed him to maintain his innocence while pleading guilty to this charge.

These arguments were presented to and considered by the BIA. That the case against Palmer may have been weak (a view taken by the IJ) does not result in a finding that the BIA improperly refused discretionary relief. As the BIA correctly observed, an alien may not collaterally attack an otherwise valid state court conviction, or go behind the judicial record to determine, in immigration proceedings, the guilt or innocence of the alien. *Guillen–Garcia v. INS,* 999 F.2d 199, 205 (7th Cir.1993); *Rassano v. INS,* 377 F.2d 971, 974 (7th Cir.1966); *Trench v. INS,* 783 F.2d 181, 184 (10th Cir.), *cert. denied,* 479 U.S. 961, 107 S.Ct. 457, 93 L.Ed.2d 403 (1986); *Avila–Murrieta v. INS,* 762 F.2d 733, 736 (9th Cir.1985); *Zinnanti v. INS,* 651 F.2d 420, 421 (5th Cir.1981); *Chiaramonte,* 626 F.2d at 1098 (foreign conviction); *Matter of Goldeshtein,* —— I. & N. Dec. at ——, Int. 3158. The favorable exercise of discretion is "an extraordinary act and a matter of grace." *Patel v. INS,* 738 F.2d 239, 242 (7th Cir. 1984). Thus, the relative significance of the 1986 conviction is to be determined by the BIA in the first instance; it need not share Palmer's perspective on the events that resulted in the guilty plea.

The BIA's opinion demonstrates that it reflected on the balance of favorable and unfavorable factors in denying discretionary relief. The BIA does not have to "write an exegesis on every contention. What is required is merely that it consider the issues raised and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Becerra–Jimenez v. INS,* 829 F.2d 996, 1000 (10th Cir.1987). *See also Vergara–Molina v. INS,* 956 F.2d 682, 685 (7th Cir.1992).

Having considered Palmer's arguments, the BIA determined that the crime to which

he pleaded guilty was sufficiently recent and serious to preclude a favorable exercise of discretion under § 212(h). In reaching its decision, the BIA was not bound by the IJ's view either of Palmer's 1986 conviction or the equities of his particular situation, but could review the record *de novo. Cordoba–Chaves v. INS*, 946 F.2d 1244, 1249 (7th Cir.1991); *Patel*, 811 F.2d at 381 n. 8. That this court might assign a different weight to the factors considered by the BIA is of no moment, *Garcia–Lopez*, 923 F.2d at 74, for we may not engage in a plenary review of the record. *Cordoba–Chaves*, 946 F.2d 1244, 1249 (7th Cir.1991). Our role, rather, "lies in policing the boundaries of the statutory delegation and in assuring that discretion within the scope of that delegation is exercised in a reasoned way." *Rodriguez–Barajas*, 992 F.2d at 96. The BIA's decision to deny Palmer a waiver of inadmissibility in the exercise of discretion did not exceed its delegated powers and was not irrational.

### IV.

Palmer argues that the BIA abused its discretion by not reviewing his statutory eligibility for relief under § 249, the registry statute. For the reasons that precluded discretionary relief under § 245, however, the BIA concluded that Palmer did not merit relief under § 249 in the exercise of discretion. "[I]f the Attorney General decides relief should be denied as a matter of discretion, the statutory eligibility requirements need not be addressed." *Hernandez–Patino*, 831 F.2d at 752. *See also Patel*, 811 F.2d at 380; *Matter of Goldeshtein*, —— I. & N. Dec. at ——, Int. 3158. The denial of discretionary relief under § 212(h) was proper. It follows that denial of essentially identical relief under § 249 was also proper.

Deportation will undoubtedly work hardship in this case, both to William Palmer and to his family. However, the BIA's findings that Palmer had failed to demonstrate both statutory eligibility and equities meriting a favorable exercise of discretion under § 212(h) do not constitute an abuse of discretion. Palmer's applications for relief under §§ 245 and 249 were appropriately denied.

The petition for review is DENIED; the order of the BIA is AFFIRMED.