*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0219p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

LJUPCO MATOVSKI; VIOLETA MATOVSKA,

                    *Petitioners,*

    *v.*

                   No. 05-4534

ALBERTO GONZALES, Attorney General,

                    *Respondent.*

On Petition for Review of a Decision
of the Board of Immigration Appeals.
Nos. A78 652 588; A78 652 589.

Argued: October 31, 2006

Decided and Filed: June 15, 2007

Before: MERRITT and BATCHELDER, Circuit Judges; GWIN, District Judge.[*]

---

### COUNSEL

**ARGUED:** Marshal E. Hyman, MARSHAL E. HYMAN & ASSOCIATES, Troy, Michigan, for Petitioners. Gjon Juncaj, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Marshal E. Hyman, Russell R. Abrutyn, MARSHAL E. HYMAN & ASSOCIATES, Troy, Michigan, for Petitioners. Gjon Juncaj, Blair T. O'Connor, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

GWIN, D. J., delivered the opinion of the court in which, MERRITT, J., joined. BATCHELDER, J. (pp. 17-19), delivered a separate dissenting opinion.

---

[*] The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

---

**OPINION**

---

GWIN, District Judge.

## I. Overview

With this case, Petitioners Ljupco Matovski and Violeta Matovska, his wife, (together, the "Matovskis") seek review of a decision of the Board of Immigration Appeals ("Board") that found them deportable. Petitioners say they qualify for employment-based permanent resident status. The Respondent, United States Attorney General Alberto R. Gonzales, disagrees.

The Matovskis are natives and citizens of Macedonia. On May 23, 1996, the United States admitted the Matovskis as B-2 nonimmigrants visiting for pleasure ("B-2 visitor status"). The B-2 visitor status applies to aliens who have a residence in a foreign country that they have no intention of abandoning and who are temporarily visiting the United States for pleasure. 8 U.S.C. § 1101(a)(15)(B). From May 23, 1996, through November 20, 2000, the Immigration and Naturalization Service ("INS") extended the Matovskis' B-2 visitor status eight times, which permitted them to remain in the United States.

While in the United States under B-2 visitor status, Petitioner Matovski obtained an offer of employment from Nikolic Industries, Inc. ("Nikolic Industries"). In support of its employment offer, Nikolic Industries initiated a three-step status adjustment process on Matovski's behalf, petitioning for him to become a permanent resident of the United States. After the Department of Labor earlier found there were insufficient qualified United States workers to perform the Nikolic work and the INS found Matovski was qualified for the position, the INS denied the petitioners' Application to Register Permanent Residence or Adjust Status ("I-485") on April 11, 2002, the final step in the employment-based adjustment of status process. The INS denied the application after finding that the Matovskis procured or sought to procure their B-2 visitor for pleasure visa through willful misrepresentation of a material fact. 8 U.S.C. § 1182(a)(6)(C)(i).

Upon denying Petitioners' adjustment of status applications, the INS issued Notices to Appear ("NTA"), which placed Petitioners in removal proceedings. At the removal proceedings, Petitioners renewed their adjustment of status applications and argued that they were previously authorized to remain in the United States while pursuing their adjustment of status applications. On July 22, 2004, the Immigration Judge denied Petitioners' applications for relief, finding the Matovskis "present in violation of law" for remaining in the United States past the expiration of their B-2 visitor status and, therefore, "deportable" under Section 1227(a)(1)(B) of Title 8 of the United States Code.

With regard to Petitioners' applications for discretionary relief, the Immigration Judge found Petitioners inadmissible for failing to establish that immigrant visas were immediately available to them. Specifically, the Immigration Judge found that she lacked jurisdiction to determine the portability of a valid I-140 petition pursuant to 8 U.S.C. § 1154(j). In addition, the Immigration Judge found: (1) Petitioners were inadmissible because they willfully misrepresented a material fact to obtain an immigration benefit by filing two extension of status applications containing false information; (2) Petitioners were ineligible for adjustment of status as a matter of discretion; and (3) Petitioners were ineligible for voluntary departure as a matter of discretion.

The petitioners appealed the decision of the Immigration Judge to the Board of Immigration Appeals. Separately, they filed a Request for Investigation against their former attorney, Donald Dobkin, with the State of Michigan's Attorney Grievance Commission. To some degree, Attorney

Dobkin assisted the petitioners in falsely answering a question on their applications to renew their status as B-2 visitors. On those renewal applications, the Matovskis' claimed that they were not, at the time of the renewal applications, otherwise seeking immigrant status. In actuality, the Matovskis were also seeking employment-based adjustment of status at that time. B-2 visitor status is designed for individuals who do not intend to abandon their foreign residence and who only intend to visit the United States temporarily. Obviously, the Matovskis were pursuing immigrant status at the times they completed these applications to extend their B-2 visitor status.

On November 23, 2005, the Board of Immigration Appeals affirmed the Immigration Judge's decision that the petitioners were removable, as well as the Immigration Judge's ruling that she lacked jurisdiction over portability determinations pursuant to 8 U.S.C. § 1154(j). However, the Board reversed the Immigration Judge's discretionary denial of the petitioners' voluntary departure applications. The Board made no determination regarding whether petitioners were inadmissible because they willfully misrepresented a material fact to obtain an immigration benefit. The Board also made no review of the Immigration Judge's discretionary denial of the Matovskis' application to become residents.

With this appeal, the petitioners request review of the following issues: (1) whether the Immigration Judge had jurisdiction to apply the portability provisions of 8 U.S.C. § 1154(j) when adjudicating the petitioners' adjustment of status applications; (2) whether the Immigration Judge violated the petitioners' right to due process by finding the petitioners inadmissible for misrepresentation although the Notice to Appear did not formally charge this ground of inadmissibility; and (3) whether the Board's failure to review the Immigration Judge's finding of misrepresentation prevents review by this Court.

Initially, this opinion briefly reviews the employment-based adjustment of status process and the two stages of removal proceedings. Second, we examine the factual record and procedural history of the instant case in further detail. We then address the Immigration Judge's primary rationale for denying the petitioners' adjustment of status applications: the belief that she lacked jurisdiction to make portability determinations under 8 U.S.C. § 1154(j). Finally, we address the Immigration Judge's finding of inadmissibility for misrepresentation of a material fact and her discretionary denial of Petitioners' applications, both of which the Board declined to review on the merits.

For the following reasons, we **AFFIRM IN PART** and **REVERSE IN PART** the Board's decision. We **REMAND** this case to the Immigration Judge for (1) initial determination whether immigrant visas were immediately available when Petitioners originally filed their applications for adjustment of status; and (2) adjudication of Petitioners' applications for adjustment of status in compliance with 8 U.S.C. § 1154(j).

## II.  Adjustment of Status and Removal Proceedings

### A.       Employment-Based Adjustment of Status

For an alien to adjust their status to that of a lawful permanent resident based upon a potential employment opportunity, the alien must successfully complete a three-step process. The alien's potential employer initiates the first two stages. First, the employer files an ETA-750, Application for Alien Employment Certification, with the Department of Labor. The Department of Labor grants certification where it can be shown that there are insufficient qualified U.S. workers available and willing to perform the work at the prevailing wage paid for the occupation in the area of intended employment. 8 U.S.C. § 1153(b)(3).

If the Department of Labor approves the Application for Alien Employment Certification, the employer may then file an I-140, Petition for Alien Worker with the INS. The INS examines

evidence filed with the petition to decide whether the alien is eligible for the benefit requested. For example, the INS would determine whether an alien (1) has a labor certification; and (2) meets the minimum requirement of two years of specialized training or experience needed for the alien to qualify as a "skilled worker." 8 U.S.C. § 1153(b)(3)(A)(i).

If the INS approves the I-140, the alien files an I-485, Application to Register Permanent Residence or Adjust Status, the third and final stage of the employment-based adjustment of status process. 8 U.S.C. § 1255(a) establishes three requirements for an alien to become eligible for a status adjustment to an alien lawfully admitted for permanent residence: "(1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed." If the alien satisfies each of these requirements, the INS will approve the I-485 and the alien will become a lawful permanent resident of the United States.

## B.        Removal Proceedings

If the INS denies the I-485, the agency may initiate removal proceedings against the alien by issuing a Notice to Appear. The Notice to Appear must contain "the charges against the alien and the statutory provisions alleged to have been violated." 8 U.S.C. § 1229(a)(1)(D). *See also* 8 U.S.C. § 1229a(a)(2) ("An alien placed in proceedings under this section may be charged with any applicable ground of inadmissibility . . . or deportability."). Removal proceedings against an alien are divided into two phases: (1) determination of the alien's removability; and (2) consideration of applications for discretionary relief. The due process accorded to the first stage of removal proceedings is significantly different from that given in the second stage.

In the first stage of a removal proceeding, "the Service has the burden of establishing by clear and convincing evidence that, in the case of an alien who has been admitted to the United States, the alien is deportable." 8 U.S.C. § 1229a(c)(3)(A). In the second stage, petitioners may raise applications for discretionary relief for which they bear the burden of proof. Potential grounds for discretionary relief include "(i) adjustment of status, 8 U.S.C.S. § 1255; (ii) cancellation of removal, 8 U.S.C.S. § 1229b; (iii) asylum, 8 U.S.C.S. § 1158; [(iv)] voluntary departure, 8 U.S.C.S. § 1229c; and [(v)] registry, 8 U.S.C.S. § 1259." *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 698 n.13 (6th Cir. 2002).

If the Immigration Judge finds deportability and denies all applications for discretionary relief, petitioners may appeal these decisions to the Board of Immigration Appeals. Thereafter, petitioners may petition this Court to review decisions of the Board.

## III.  Factual Background and Procedural History

## A.        Adjustment of Status Process

Petitioners Ljupco Matovski and Violeta Matovska are natives and citizens of Macedonia who were married on February 10, 1995. The petitioners have two children who are citizens of the United States. On May 23, 1996, the United States admitted the petitioners to attend the wedding of a family member as visiting for pleasure B-2 nonimmigrants. Petitioners allege that they initially intended to return to Macedonia after the wedding. However, Mr. Matovski identified a company, Nikolic Industries, who wished to employ him as a machine builder and sponsor him for permanent residency.

The petitioners and Nikolic Industries retained Attorney Donald Dobkin, to help them with the three-step employment-based adjustment of status process. On October 30, 1996, Nikolic

Industries filed an ETA-750 on behalf of Mr. Matovski with the Department of Labor, the first step in obtaining an adjustment of status.

Although Nikolic Industries filed this Application for Alien Employment Certification on their behalf, the petitioners continued their presence in the United States under the previously issued B-2 visitor for pleasure visa. By its nature, the B-2 visitor admission is inconsistent with efforts to immigrate. The B-2 visa requires the alien have "a residence in a foreign country which he has no intention of abandoning." 8 U.S.C. § 1101(a)(15)(B).

The petitioners' initial B-2 visitor for pleasure admission expired on November 22, 1996. On November 5, 1996, the petitioners filed a B-2 Extension Application. The INS granted the extension for an additional six months. Subsequently, the petitioners filed seven additional B-2 Extension Applications that the INS granted. As a result of these extensions, the petitioners maintained their B-2 nonimmigrant visitor for pleasure status until November 20, 2000.

Petitioners allege that during the adjustment of status process, Attorney Dobkin repeatedly told them that immigration law permitted the filing of successive B-2 Visitor Extension Applications. In their final two B-2 Visitor Extension Applications, Petitioners failed to disclose that Nikolic Industries had filed an employment-based adjustment of status petition on Matovski's behalf.

On June 26, 1999, nearly three years after Nikolic Industries filed the ETA-750, the Department of Labor approved the Application for Employment Certification, finding that no qualified American workers were available for the position being offered. On August 9, 1999, Nikolic Industries filed an I-140 form on behalf of the petitioner, the second step in obtaining an employment-based adjustment of status to permit residency. The INS approved the I-140 petition. On September 7, 2000, while still maintaining B-2 visitor nonimmigrant status, the petitioners initiated the third and final step of the employment-based application for permanent residency by filing I-485 forms with the INS.

As an accompanying document to the I-485 form, Matovski filed an Application for Employment Authorization ("I-765"), signed on August 23, 2000. Matovski also submitted an August 21, 2000 letter from Nikolic Industries confirming its offer of employment to work as a machine builder for $16.40 per hour. The INS granted the I-765 on November 2, 2000. At that time, Matovski was legally permitted to work for his sponsoring employer. Nevertheless, it is unclear from the record whether Matovski ever actually worked for Nikolic Industries.

Approximately three weeks after the I-765 application was granted, Mr. Bolgoja Gjerofski, the owner and operator of Bob G. Turning and Milling, Inc. ("Bob G."), offered Petitioner Matovski full-time, permanent employment as a machine builder at the wage of $19.00 per hour. These conditions allegedly represented the same occupational classification and wage as Petitioner Matovski's previous offer of employment with Nikolic Industries. On November 27, 2000, Petitioner began working for Bob G. and continued this employment until March 2002.

## B.    INS Denial of Adjustment of Status Application

On April 11, 2002, the INS denied the petitioners' I-485 applications for permanent residency. 8 U.S.C. § 1255(a) establishes three requirements for an alien who was admitted to the United States to become eligible for permanent residence: "(1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed." As described below, the INS denied the applications after finding that the Matovskis procured or sought to procure their B-2 visitor for pleasure visas through willful misrepresentation of a material fact.

8 U.S.C. § 1182(a)(6)(C)(i) precludes as inadmissible "[a]ny alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this Act." The INS determined that Petitioners were no longer admissible to the United States because they had "falsely claimed that an immigration petition had not been filed on [their] behalf when in fact one had been." Petitioners had filed their final two B-2 Extension Applications on November 29, 1999 and May 23, 2000, after Nikolic Industries had filed an I-140 petition with the INS on Matovski's behalf. The INS also found that an accurate response would have adversely affected the petitioners' eligibility for an extension of nonimmigrant status.

Additionally, the INS noted that Nikolic Industries filed an ETA-750 form (initiating the employment-based adjustment of status process) on October 30, 1996. Although the Matovskis were thus seeking immigrant status at that time, the first four B-2 Extension Applications filed subsequently by the petitioners falsely characterized their stay as "temporary." Likewise, at least one B-2 Extension Application seeking a visa to visit for pleasure expressed the petitioner's intention to depart the United States at the conclusion of his stay. As such, the INS highlighted, "You have consistently mischaracterized the facts surrounding your stay within the United States" because "[y]our intention to apply for permanent resident status within the United States is completely inconsistent with your claims that it was your intention to remain in the United States only temporarily." Finally, the INS advised the petitioner that "any employment authorization and travel authorization issued based on your having a pending application to register permanent residence or adjust status also expire as a result of this decision."

## C.        Removal Proceedings

On April 11, 2002, the INS also initiated removal proceedings against the petitioners by filing Notices to Appear. The Notices to Appear stated the petitioners had "remained in the United States beyond November 20, 2000 without authorization from the Immigration and Naturalization Service." As such, the INS charged the petitioners with being subject to removal from the United States pursuant to "Section 237(a)(1)(B) of the Immigration and Nationality Act . . . in that after admission as a nonimmigrant under section 101(a)(15) of the Act you have remained in the United States for a time longer than permitted." 8 U.S.C. § 1227(a)(1)(B). The Notices to Appear did not specifically charge the petitioners with being inadmissible as aliens who sought to obtain an immigration benefit through misrepresentation.

During initial removal proceedings before an Immigration Judge, the petitioners conceded their removability as charged, but said they should be permitted to remain in the United States while pursuing their efforts to register as permanent residents. They also renewed their adjustment of status applications and applied for the alternative relief of voluntary departure. However, as their applications were denied on April 11, 2002, the petitioners conceded that from that date forward they remained in the country without authorization. The Immigration Judge later noted in her oral decision that the petitioners "neither admitted or denied that they were present in the United States beyond November 28, 2000 without authorization from the Immigration and Naturalization Service."

On June 29, 2004, the Immigration Judge held a merits hearing. In support of their renewed adjustment of status applications, the petitioners relied upon a provision from the American Competitiveness in the Twenty-First Century Act of 2000:

> A petition under subsection (a)(1)(D) for an individual whose application for adjustment of status pursuant to section 245 [8 USCS § 1255] has been filed and remained unadjudicated for 180 days or more shall remain valid with respect to a

new job if the individual changes jobs or employers if the new job is in the same or a similar occupational classification as the job for which the petition was filed.

8 U.S.C. § 1154(j). Under this provision, the petitioners argued that Matovski's original I-140 petition remained valid despite his change of employers. In addition, the petitioners showed that on September 16, 2003, they had advised the Department of Homeland Security ("DHS")[1] that Matovski had "changed employers" and intended to rely upon 8 U.S.C. § 1154(j) in order to maintain a valid I-140 petition.

## D.        Decision of the Immigration Judge

On July 22, 2004, the Immigration Judge first found that the petitioners' removability had been established by clear and convincing evidence as required by 8 U.S.C. § 1229a.[2] Petitioners then raised two applications for discretionary relief, both of which the Immigration Judge denied.

The Immigration Judge denied the petitioners' renewed applications for permanent residence, Petitioners' first application for discretionary relief, for three reasons. First, the Immigration Judge denied Petitioners' application because the petitioners failed to establish that an immigrant visa was immediately available to them. In reaching this decision, she rejected the petitioners' argument that immigration visas are immediately available through application of the 8 U.S.C. 1154(j) portability provision. Specifically, she held that she lacked jurisdiction to apply 8 U.S.C. § 1154(j) because the Attorney General "has not issued regulations which would allow this Court the authority to adjudicate the issue of portability . . . ."

Second, the Immigration Judge denied the petitioners' application for discretionary relief because she found the petitioners inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i) "for misrepresenting facts material to a determination of his eligibility to receive an extension of nonimmigrant status." The petitioners had filed two B-2 Extension Applications containing false information.

Third, the Immigration Judge denied the petitioners' application for discretionary relief as a matter of discretion due to the "pattern of immigration fraud perpetrated over a period of four years."

The Immigration Judge also denied the petitioners' applications for voluntary departure, Petitioners' second application for discretionary relief, as a matter of discretion. She then ordered that the petitioners be "removed and deported from the United States to Macedonia on the charges contained within the Notice to Appear."

## E.        Petitioners' Appeal to the Board of Immigration Appeals

On August 5, 2004, the petitioners appealed the decision of the Immigration Judge to the Board of Immigration Appeals, claiming: (1) the Immigration Judge erred in determining that she lacked jurisdiction to address the applicability of portability provisions contained within 8 U.S.C. § 1154(j); (2) the Immigration Judge exceeded her authority and deprived the petitioners of due

---

[1] On March 1, 2003, the INS ceased to exist as an independent agency within the Department of Justice, and its functions were transferred to the newly formed Department of Homeland Security. Homeland Security Act of 2002, Pub. L. No. 107-296, §§ 441, 451, 471, 116 Stat. 2135 (Nov. 25, 2002).

[2] The Immigration Judge found Petitioners removable because (1) their B-2 visitor visas had expired; and (2) the Department of Homeland Security had denied the petitioners' I-485 applications for permanent residence. Petitioners conceded their removability upon these facts.

process by finding the petitioners inadmissible for willful misrepresentation under 8 U.S.C. § 1182(a)(6)(C)(i) because this ground was not charged on the Notice to Appear; (3) the Immigration Judge erred in concluding that the petitioners knowingly misrepresented a material fact; and (4) the petitioners merited a favorable exercise of discretion with respect to their applications for relief.

On November 23, 2005, the Appeals Board sustained, in part, and dismissed, in part, the petitioners' appeal. The Board affirmed the Immigration Judge's ruling that she lacked jurisdiction to address the applicability of portability provisions contained within 8 U.S.C. § 1154(j). Likewise, the Board held that the Immigration Judge's consideration of the petitioners' inadmissibility under 8 U.S.C. § 1182(a)(6)(C)(i) did not violate the petitioners' due process rights because the Immigration Judge could rule on any ground for exclusion that arose during the course of a hearing so long as the petitioners were given a reasonable opportunity to respond to the issue.

After ruling on these issues, the Board of Immigration Appeals never reached the merits of Petitioners' claim that the evidence failed to show they knowingly misrepresented a material fact. Similarly, the Board did not address the Immigration Judge's discretionary denial of the petitioners' adjustment of status applications. However, the Board did reverse the Immigration Judge's discretionary denial of the petitioners' applications for voluntary departure.

## IV. Legal Standards

We review Board of Immigration Appeals rulings on legal issues concerning the requirements of the immigration statute *de novo*. *See Castellano-Chacon v. INS*, 341 F.3d 533, 552-53 (6th Cir. 2003). Likewise, we give deference to an agency's reasonable interpretation of its statute and underlying regulations. *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999). Finally, we may consider only those issues previously addressed by the Board. *INS v. Ventura*, 537 U.S. 12, 15-17 (2002).

## V. Analysis

As described in greater detail above, during Petitioners' removal proceedings the Immigration Judge denied the petitioners' renewed adjustment of status applications on three grounds. First, the Immigration Judge ruled that she lacked jurisdiction to adjudicate the portability of Petitioner's I-140 petition under 8 U.S.C. § 1154(j). Additionally, the Immigration Judge held that petitioners were inadmissible (1) because they willfully misrepresented a material fact to obtain an immigration benefit; and (2) as a matter of discretion.

With this appeal, Petitioners say that the Board of Immigration Appeals erred in upholding the Immigration Judge's denial of their renewed adjustment of status applications. Specifically, the petitioners first argue that the Board erred in determining that an Immigration Judge does not have jurisdiction to adjudicate portability determinations under 8 U.S.C. § 1154(j). Second, Petitioners renew their argument, which the Board rejected, that the Immigration Judge deprived them of due process by finding the petitioners inadmissible for willful misrepresentation under 8 U.S.C. § 1182(a)(6)(C)(i) despite the fact that this ground was not charged on the Notice to Appear. Finally, the petitioners argue that this Court may not review the Immigration Judge's two remaining bases for denying their applications on the merits because the Board did not address them. We consider each of the petitioners' arguments below.

## A.    Jurisdiction to Adjudicate Portability Determinations Under 8 U.S.C. § 1154(j)

Petitioners first allege that the Board erred when it ruled that the Immigration Judge lacked jurisdiction to adjudicate the portability of Petitioner's I-140 form under 8 U.S.C. § 1154(j) in a removal proceeding. Respondent argues that Immigration Judges do not have authority to make

such portability determinations because the Attorney General never granted the Immigration Judges such power. Because we find the Petitioners' position more persuasive, the Court **REVERSES** this ruling and **REMANDS** the adjudication of Petitioners' renewed adjustment of status applications to the Immigration Judge for further proceedings in conjunction with proper application of 8 U.S.C. § 1154(j).

1.      *Applicability of 8 C.F.R. § 245.1(g)*

The Immigration Judge primarily based her denial of Petitioners' renewed adjustment of status applications upon her decision that she lacked jurisdiction to adjudicate the portability of Petitioner's I-140 petition under 8 U.S.C. § 1154(j). Without a valid I-140 petition on their behalf, the petitioners could not demonstrate that immigrant visas were immediately available to them at that time. If 8 C.F.R. § 245.2(a)(5)(ii) is applicable here, however, it may not have been essential for the Immigration Judge to determine whether immigrant visas were immediately available to the petitioners during the removal proceedings.

In addition to providing aliens with the right to renew applications for adjustment of status in removal proceedings, 8 C.F.R. § 245.2(a)(5)(ii) also states, "[a]t the time of renewal of the application, an applicant does not need to meet the statutory requirement of section 245(c) of the Act, or § 245.1(g), if, in fact, those requirements were met at the time the renewed application was initially filed with the director." Therefore, if immigrant visas were immediately available to the petitioners when they originally filed their I-485 applications for permanent residency, the petitioners were not required to show that immigrant visas were immediately available at the time they renewed their applications. Unfortunately, it is not clear whether the petitioners qualified for immigrant visas at the time they originally filed their I-485 applications. Numerous factors could prevent the availability of an immigrant visa. For example, the priority date for granting employment-based adjustment of status applications to skilled workers such as Matovski may not have passed by the time the petitioners filed their I-485 applications. *See* 8 C.F.R. § 245.1(g)

Since the applicability of 8 C.F.R. § 245.1(g) could have made a determination regarding portability under 8 U.S.C. § 1154(j) unnecessary, the Immigration Judge should have decided whether immigration visas were otherwise available to the petitioners when they originally filed their adjustment of status applications before she addressed the applicability of 8 U.S.C. § 1154(j). In the instant case, there is no evidence suggesting that the Immigration Judge ever considered, let alone ruled on the issue of whether immigrant visas were immediately available to the petitioners at the time they originally filed their adjustment of status applications. Therefore, we **REMAND** the case to the Immigration Judge for further proceedings to develop the record in order to make this determination.

2.      *Jurisdiction to Adjudicate Portability Determinations Under 8 U.S.C. § 1154(j)*

Assuming that 8 C.F.R. § 245.1(g) is not applicable, the Immigration Judge must then decide whether immigrant visas are available to the petitioners in removal proceedings. The Immigration Judge previously decided, and the Board affirmed, that she lacked jurisdiction to make such an adjudication in accordance with 8 U.S.C. § 1154(j). We consider that decision below.

Together with family-sponsored immigration and diversity immigration, immigration provisions give special treatment to employment-based immigrants. 8 U.S.C. § 1182(a)(5). Applications under these provisions require that "the Secretary of Labor has determined . . . that there are not sufficient workers who are able, willing, qualified . . . and available at the time of application . . . and the employment of such alien will not adversely affect the wages and working conditions of workers in the United States similarly employed." *Id.* Because these determinations regarding the availability of American workers require significant time, Congress provided some flexibility to applicants awaiting determination. Congress enacted 8 U.S.C. § 1154(j) as part of the

American Competitiveness in the Twenty-First Century Act of 2000, Pub. L. No. 106-313 to provide "[j]ob flexibility for long delayed applicants for adjustment of status to permanent residence."

Although Congress enacted this legislation six years ago, the DHS and Board of Immigration Appeals have failed to issue implementing regulations governing portability determinations of I-140 petitions under this provision. As a result of the significant delay in establishing formal regulations, aliens such as the petitioners who have renewed employment-based applications for adjustment of status in removal proceedings lack any procedure to demonstrate that their new employment satisfies the portability provisions of 8 U.S.C. § 1154(j).

Regardless of this delay, Respondent maintains that the Immigration Judge had "no authority to apply section 204(j) of the INA to an adjustment of status application." On appeal, the Board of Immigration Appeals agreed that the Immigration Judge's jurisdiction is limited to that delegated by the Attorney General. *See Matter of Perez-Vargas*, 23 I. & N. Dec. 829, 831 (BIA 2005) ("Immigration Judges have no authority to make such adjudications because the regulations give them no jurisdiction over visa petitions."). In addition, the BIA noted "[i]n light of general regulatory requirements that an employment-based visa petition must be filed with the Service Center having appropriate jurisdiction, we find no error in the Immigration Judge's determination above." *See* 8 C.F.R. § 204.5(b). We disagree for the following reasons.

a.        *Petitioners Complied with Statutory Regulations and Informal Guidance*

As an initial matter, we first note that the petitioners have complied with both the statutory regulations and informal guidance that exist regarding the adjudication of applications for adjustment of status during removal proceedings. Applications for discretionary relief during removal proceedings are governed by 8 C.F.R. § 245.2(a)(5)(ii), which states "No appeal lies from the denial of an application by the director, but the applicant, if not an arriving alien, retains the right to renew his or her application in [removal] proceedings." Therefore, while primary authority over adjustment of status applications rests with the INS, 8 C.F.R. § 245.2(a)(5)(ii) authorizes Immigration Judges to adjudicate such applications upon their renewal in removal proceedings. As such, the petitioners satisfied the jurisdictional regulations governing the renewal of their applications for adjustment of status.

Additionally, the petitioners have complied with the government's informal guidance regarding 8 U.S.C. § 1154(j). That government guidance suggests an I-140 Petition for Alien Worker, such as that filed on behalf of the petitioners by Nikolic Industries, remains valid once a filed I-485 Application to Register Permanent Residence or Adjust Status remains unadjudicated for longer than 180 days, irrespective of whether the employer withdraws their initial I-140 petition. The American Competitiveness in the Twenty-First Century Act "provides that any underlying labor certification also remains valid if the conditions of § 106(c) [8 U.S.C. § 1154(j)] are satisfied." 8 U.S.C. § 1154(j) contains no language stating that the provision no longer applies if the INS initially denies a petitioner's I-485 adjustment of status application.

The petitioners also complied with existing informal government guidance by submitting evidence of a new qualifying offer of employment to the DHS after Nikolic Industries withdrew its I-140 petition.[3] Specifically, on September 16, 2003, Matovski and his new employer, Bob G.,

---

[3] Informal government guidance provides that in the event of an employer's withdrawal of its I-140 petition, "It is expected that the alien will have submitted evidence to the office having jurisdiction over the pending Form I-485 that the new offer of employment is in the same or similar occupational classification as the offer of employment for which the petition was filed." If such a withdrawal occurs and the alien fails to submit evidence of a new qualifying offer of employment, "A Notice of Intent to Deny will be issued on the I-485 to determine if the alien has a new offer of employment in the same or similar occupation." Only if the applicant fails to adequately respond to the Notice of

notified the DHS in writing of Matovski's change in employment. This letter described the title and salary of Matovski's new position. At no point in time has the DHS ever requested further information from Matovski or Bob G. regarding this offer of employment. Likewise, the DHS never issued a Notice of Intent to Deny with regard to Matovski's I-485 Application for Adjustment of Status. Finally, unlike the Immigration Judge, the DHS has never questioned Petitioners' reliance upon Matovski's previously approved I-140 Petition for Alien Worker. Nonetheless, the DHS has never made a determination of the validity of Matovski's visa petition consistent with 8 U.S.C. § 1154(j).

The BIA stressed in *Perez-Vargas*, "[when] the respondent has asserted that he remains eligible for labor certification through his new employment, it is incumbent upon the DHS to determine whether the respondent's visa petition remains valid pursuant to section 204(j) of the Act." 23 I. & N. Dec. at 833 n.7. We agree, but note that in this case the DHS has now declined to make such a determination for over three years.[4]

The petitioners have sought to comply with the guidance promulgated by the government. However, the Board of Immigration Appeals found that the petitioners could not invoke the portability provisions of 8 U.S.C. § 1154(j) solely because removal proceedings had been initiated. By affirming that an Immigration Judge lacks jurisdiction to make such portability determinations, the Board effectively eliminated Petitioners' capacity to avail themselves of 8 U.S.C. § 1154(j). This holding contradicts Congress' intent in providing protections for long delayed applicants for adjustment of status with valid employment opportunities.

b.      *No Authority Expressly Forbids an Immigration Judge from Adjudicating Portability Determinations*

Respondent also states that Immigration Judges are precluded from adjudicating portability determinations because the Attorney General has not delegated such authority. Respondent relies upon 8 C.F.R. § 1003.10, which provides that "Immigration Judges, as defined in 8 C.F.R. part 1, shall exercise the powers and duties in this chapter regarding the conduct of exclusion, deportation, removal, and asylum proceedings and such other proceedings which the Attorney General may assign them to conduct." Respondent argues that the Attorney General has refrained from issuing formal regulations that give Immigration Judges authority to adjudicate portability determinations under 8 U.S.C. § 1154(j).

While no regulation specifically gives Immigration Judges the authority to adjudicate portability, no regulation expressly forbids their adjudication of such matters. More generally,

---

Intent to Deny may the DHS deny the I-485 Application for Adjustment of Status. Here, the record indicates that although the petitioners never received a Notice of Intent to Deny from DHS, they nonetheless submitted the required evidence of a new offer of employment.

[4] We are aware of the recent ruling of the District Court for the District of Columbia in *Mawalla v. Chertoff*, 2007 U.S. Dist. LEXIS 284 (D.D.C. 2007). The *Mawalla* Court held with regard to the applicability of 8 U.S.C. § 1154(j), "the key date in determining eligibility for the benefit of AC21 is the date on which the alien changes jobs (*i.e.*, the date on which he takes an action that could otherwise make him ineligible for adjustment of status). If the job change occurs 180 days or more after the date on which the alien filed an application for adjustment of status, the alien's previously approved I-140 application will remain in effect with respect to the new job . . . The question is not how long the I-140 petition was on file but whether the I-485 application for adjustment was pending for 180 days or more 'when [the] alien change[d] jobs.'" *Id.* at *15-16 (citation omitted).

Whether Matovski changed jobs less than 180 days prior to filing his I-485 application may impact Petitioners' capacity to avail themselves of the portability provisions of 8 U.S.C. § 1154(j). However, the Immigration Judge originally held that she lacked jurisdiction to decide whether 8 U.S.C. § 1154(j) was applicable. In accordance with this opinion, the applicability of 8 U.S.C. § 1154(j) must first be addressed by the Immigration Judge. As such, this issue is not properly before this Court at this time.

8 C.F.R. § 245.2(a)(5)(ii) gives Immigration Judges the authority to adjudicate renewed applications for adjustment of status in the context of removal proceedings. 8 U.S.C. § 1154(j) does not exclude aliens in removal proceedings from its protections.[5] Likewise, the language found within 8 U.S.C. § 1154(j), "shall remain valid," is mandatory not discretionary. In seeking to provide job flexibility for long delayed applicants, Congress never distinguished between aliens filing an initial application with the DHS and those aliens renewing their applications in removal proceedings before an Immigration Judge. Instead, Congress sought to ensure that bureaucratic delays would not eliminate the possibility of adjustment of status for all aliens with legitimate employment opportunities.

Case law does not support Respondent's argument. For example, in *Krishnamoorthy v. Ridge*, 2003 WL 21204051 (N.D. Ill. May 19, 2003), the court explicitly rejected the government's determination that the petitioner's I-485 application should be rejected because "the 'portability under Section 106(c) or the American Competitiveness in the 21st Century Act,' claimed by Krishnamoorthy, could not, 'in the absence of regulatory guidance or instructive policy memoranda, be applied in the instant matter.'" *Id.* Specifically, in granting a mandamus petition, the *Krishnamoorthy* court noted that "Courts in this district have already held that 'a petitioner has a right to adjudication of ⋯ [an] adjustment of status application[ ] and that INS has a corresponding duty to adjudicate these applications.'" *Id.* at *9 (citing *Setharatsomphou v. Reno*, 1999 WL 755292, at *4 (N.D. Ill. Sept. 27, 1999)). Indeed, the court in *Krishnamoorthy* held that "[t]his duty is mandatory not discretionary . . ." and that "...to be meaningful, INS must adjudicate applications in accordance with governing statutes, including § 204(j). Therefore, INS has a clear duty to adjudicate Krishnamoorthy's application in accordance with § 204(j)." *Krishnamoorthy*, 2003 WL 21204051, at *9.

c.          *Scope of Jurisdiction Conferred by 8 C.F.R. § 245.1(c)(8)*

Finally, the petitioners cite four cases from our sister circuits to support their argument that Immigration Judges and the Board of Immigration Appeals may not narrowly construe their jurisdiction when Congress intended protection for the class. *See Scheerer v. Gonzales*, 445 F.3d 1311 (11th Cir. 2006); *Bona v. Gonzales*, 425 F.3d 663, 668-70 (9th Cir. 2005); *Zheng v. Gonzales*, 422 F.3d 98, 119-120 (3d Cir. 2005); *Succar v. Gonzales*, 394 F.3d 8, 29 (1st Cir. 2005). These cases examine the application of 8 C.F.R. § 245.1(c)(8) by Immigration Judges. That section excludes from eligibility to apply for permanent residency "Any alien who seeks to adjust status based upon a marriage which occurred on or after November 10, 1986, and while the alien was in exclusion, deportation, or removal proceedings." This provision directly contradicted 8 U.S.C. § 1255(a), which granted eligibility to pursue adjustment of status to any alien who was inspected, admitted or paroled into the United States.

Employing traditional *Chevron* two-step analysis, two circuits invalidated the regulation under *Chevron's* first step, finding that Congress had spoken to the precise question at issue and the regulation was contrary to Congress' clearly expressed intent. *See Bona*, 425 F.3d at 668-70; *Succar*, 394 F.3d at 29. The Third and Eleventh Circuits invalidated the regulation under *Chevron's* second step, holding that the regulation was not based on a permissible construction of the statute because it was inconsistent with the eligibility standards established in 8 U.S.C. § 1255(a). *See Scheerer*, 445 F.3d at 1320; *Zheng*, 422 F.3d at 119-120.

---

[5] We are also aware of the recent ruling of our sister circuit in *Perez-Vargas v. Gonzales*, 478 F.3d 191, 194 (4th Cir. 2007). In reversing the BIA, the Court held "[b]ecause an IJ has 'exclusive jurisdiction' to adjudicate an application for adjustment of status, he necessarily has jurisdiction to make a § 204(j) determination, which is simply an act of factfinding incidental to the adjustment of status process." *Id.* (citing 8 C.F.R. § 1245.2(a)(1)). In addition, the Court found, "By its terms, § 204(j) does not distinguish between those aliens whose adjustment applications are pending before DHS and those aliens whose adjustment applications are required to be filed with an IJ." *Id.* at 195.

Petitioners analogize that the Board is similarly excluding from eligibility for permanent residence the class of aliens needing to change sponsoring employers because of administrative delays in processing their applications. Congress understood how to limit the categories of aliens eligible to apply for adjustment of status, and it explicitly excluded several categories of otherwise eligible aliens. 8 U.S.C. § 1255. *See Bona*, 425 F.3d at 669. We should not defer to the discretion of the Board when the Board contradicts the expressed intent of Congress to protect the job flexibility of long-delayed applicants.

Interestingly, while Respondent claims that Immigration Judges lack jurisdiction over portability determinations because the Attorney General has yet to delegate such authority, the Respondent fails to explain what authority permits Immigration Judges to ignore valid I-140 petitions. The government has issued informal guidance establishing procedures for the DHS to revoke an I-140 petition upon receipt of an inadequate response to a Notice of Intent to Deny. However, no formal or informal regulation authorizes an Immigration Judge to refuse implementation of 8 U.S.C. § 1154(j) in the absence of such a revocation.

For all the reasons discussed above, the Court **REVERSES** the Board of Immigration Appeals' ruling affirming that Immigration Judges lack jurisdiction over 8 U.S.C. § 1154(j) portability determinations and **REMANDS** the adjudication of Petitioners' renewed adjustment of status applications to the Immigration Judge for further proceedings in conjunction with proper application of 8 U.S.C. § 1154(j).

## B.        Due Process Violation

Petitioners also allege that the Board of Immigration Appeals erred when it found that the Immigration Judge had authority to consider whether Petitioners are inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i) for willfully misrepresenting a material fact. Petitioners contend that their right to due process was violated by the consideration of a ground of inadmissibility that was not charged within the Notice to Appear. With this argument, the petitioners have mistakenly interchanged the due process owed at two different stages of a removal proceeding: (1) determination of the petitioners' removability; and (2) adjudication of petitioners' applications for discretionary relief.

### 1.        *Stage One: Determination of Removability*

The first stage of the Matovskis' removal proceeding required the Immigration Judge to determine whether their removability had been established by clear and convincing evidence as required by 8 U.S.C. § 1229a. The petitioners' Notices to Appear stated the Matovskis were subject to removal from the United States pursuant to 8 U.S.C. § 1227(a)(1)(C)(i) "in that after admission as a nonimmigrant . . . you have remained in the United States for a time longer than permitted."

The petitioners admitted the first four factual allegations contained within the Notice to Appear that detailed their admission and subsequent extension of admission as nonimmigrant visitors for pleasure. The petitioners neither admitted nor denied the fifth factual allegation contained within the Notice to Appear: "You remained in the United States beyond November 20, 2000 without authorization from the Immigration and Naturalization Service." However, the petitioners failed to present any evidence that any further extensions had been granted. Finally, the petitioners "conceded that they are subject to removal under the provisions of Section 237(a)(1)(B) of the Act in that after admission as non-immigrants under Section 101(a)(15) of the Act they have remained longer than permitted." 8 U.S.C. § 1227(a)(1)(C)(i) provided the sole ground for Petitioners' removability: remaining in the United States longer than permitted after admission as a nonimmigrant visitor for pleasure.

The petitioners correctly note that due process requires that a Notice to Appear contain all grounds for removability. 8 U.S.C. § 1229(a)(1)(D). *See also Detroit Free Press*, 303 F.3d at 698

("This document must contain information sufficient to put the non-citizen on notice of the charges against him."). However, the INS never charged the petitioners with any other ground for removal beyond their failure to maintain valid nonimmigrant visitor-for-pleasure status under 8 U.S.C. § 1227(a)(1)(C)(i), a charge contained within their Notices to Appear. Likewise, the Immigration Judge found that the petitioners were removable on this ground alone. Whereas the Immigration Judge denied in part Petitioners' renewed adjustment of status applications for willful misrepresentation of a material fact under 8 U.S.C. § 1182(a)(6)(C)(i), violation of this provision was never reviewed as a ground for removal. Therefore, no due process violation occurred during the first stage of Petitioners' removal proceeding.

### 2.        *Stage Two: Adjudication of Applications for Discretionary Relief*

The due process accorded to the first stage of removal proceedings (determination of removability) differs from that accorded throughout the second stage (adjudication of applications for discretionary relief). Upon a finding of removability, petitioners are permitted to raise applications for discretionary relief, including "(i) adjustment of status, 8 U.S.C.S. § 1255; (ii) cancellation of removal, 8 U.S.C.S. § 1229b; (iii) asylum, 8 U.S.C.S. § 1158; [(iv)] voluntary departure, 8 U.S.C.S. § 1229c; and [(v)] registry, 8 U.S.C.S. § 1259." *Detroit Free Press*, 303 F.3d at 698 n.13. In the present case, Petitioners filed applications seeking adjustment of status and voluntary departure.

Throughout the first stage of a removal proceeding, the government bears the burden of proving removability by clear and convincing evidence. 8 U.S.C. § 1229a(c)(3)(A). However, during the second stage of a removal proceeding, an alien who is an applicant for admission maintains the burden of establishing that he or she is "clearly and beyond doubt entitled to be admitted and is not inadmissible." *See* 8 C.F.R. § 1240.8(b). "An alien seeking to adjust his status to that of a lawful permanent resident is assimilated to the position of an applicant for entry into the United States." *Palmer v. INS*, 4 F.3d 482, 484 (7th Cir. 1993) (citing *Pei-Chi Tien v. INS*, 638 F.2d 1324, 1326 (5th Cir. 1981)); *Yui Sing Tse v. INS*, 596 F.2d 831, 834 (9th Cir. 1979).

Therefore, when the petitioners renewed their adjustment of status applications, they bore the burden of establishing both that they were statutorily eligible for the requested relief and that they merited a favorable exercise of agency discretion. *Detroit Free Press*, 303 F.3d at 698 (citing 8 C.F.R. § 242.17(e)). The petitioners enjoyed the right to know the charges of removability against them and to have those charges listed on Notices to Appear. However, the petitioners had no right to require the government to list every defense against their potential applications for discretionary relief. Compliance with such a request for written verification of every possible defense to every potential form of discretionary relief would be virtually impossible. *Brown v. Ashcroft*, 360 F.3d 346, 351-52 (2d Cir. 2004).

As such, we find that the Board of Immigration Appeals correctly held that "an Immigration Judge may rule on any ground of inadmissibility that arises during the course of the proceedings, including such grounds that are not included in the charging document." *See Matter of Salazar*, 17 I. & N. Dec. 167 (BIA 1979) ("If . . . a possible ground of excludability develops, it is proper for the ground to be ruled upon by the immigration judge, as long as the applicant is informed of the issues confronting him at some point in the hearing, and he is given a reasonable opportunity to meet them."). In addition, Petitioners had actual notice that the government intended to oppose admissibility on the ground that Petitioners allegedly misrepresented a material fact. This rationale was the primary ground of inadmissability adopted by the INS in their initial denial of Petitioners' I-485 applications. As such, the petitioners cannot claim that they were unfairly disadvantaged by the Immigration Judge's admission of this line of argument. *See Brown*, 360 F.3d at 351 (holding with regard to an uncharged defense to a petitioner's application for discretionary relief, "Brown had

the burden of proof . . . and had to at least have been aware of the possibility that the INS would try to rely on his 1996 conviction to bar him from relief.").

Finally, Petitioners argue that the DHS had ample opportunity to charge the ground of inadmissibility for willful misrepresentation by merely amending the Notice to Appear at any time during the course of the removal proceeding pursuant to 8 C.F.R. § 1003.30 ("At any time during deportation or removal proceedings, additional or substituted charges of deportability and/or factual allegations may be lodged by the Service in writing. The alien shall be served with a copy of these additional charges and/or allegations and the Immigration Judge shall read them to the alien."). However, 8 C.F.R. § 1003.30 refers to charges of deportability and factual allegations, not grounds of inadmissibility or other defenses against applications for discretionary relief. Likewise, the regulation employs the term "may" not "shall," implying that the grant of authority to amend charging documents is permissive not mandatory.

Therefore, the Court **AFFIRMS** the Board of Immigration's ruling that the Immigration Judge had authority to consider whether the petitioners are inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i) for willfully misrepresenting a material fact even though the DHS failed to charge this as a ground of inadmissibility.

## C.     Review on the Merits of the Immigration Judge's Two Remaining Bases for Denying Petitioners' Applications

Petitioners contend that the Board's failure to consider the merits of Petitioners' claim that the Immigration Judge erred in finding the petitioners inadmissible for willful misrepresentation prevents meaningful review of this issue. Petitioners maintain that the Immigration Judge erroneously concluded that Petitioners willfully misrepresented a material fact. Similarly, the Board never ruled on the merits of whether the Immigration Judge abused her discretion in denying petitioners' applications for adjustment of status as a matter of discretion. We agree that without review on the merits by the Board of Immigration Appeals, these issue are not ripe for review before this Court. *See INS v. Ventura*, 537 U.S. 12, 16-17 (2002) ("Generally speaking, a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands . . . The agency can bring its expertise to bear upon the matter; it can evaluate the evidence; [and] it can make an initial determination.").

Given that we ruled in favor of the petitioners with regard to 8 U.S.C. § 1154(j) portability, we are remanding the adjudication of Petitioners' renewed adjustment of status applications to the Immigration Judge for further proceedings. The issues of whether the petitioners were properly found inadmissible for willfully misrepresenting a material fact and whether the Immigration Judge abused her discretion in finding the petitioners inadmissible as a matter of discretion will require review on the merits by the Board upon appeal from the Immigration Judge's decision.

## VI. Conclusion

For the foregoing reasons, we **AFFIRM IN PART** and **REVERSE IN PART** the decision of the Board of Immigration Appeals. We **REMAND** this case to the Immigration Judge for initial determination whether immigrant visas were immediately available when Petitioners originally filed their I-485 applications, as well as further adjudication of Petitioners' applications for adjustment of status in compliance with 8 U.S.C. § 1154(j).

———————————

**DISSENT**

———————————

ALICE BATCHELDER, Circuit Judge, dissenting.  I write separately because I disagree with the majority's analysis of the first issue, and furthermore, find it to be inconsistent with the conclusory decision on the second issue, leaving the two outcomes incongruous.  Accordingly, I disagree with both the holding and the disposition of this appeal.  Therefore, I must respectfully dissent.

The first issue involves the "portability" of an alien's I-140 petition, pursuant to INA § 204(j), 8 U.S.C. § 1154(j), with the particular question being whether the immigration judge may decide "if the new job is in the same or similar occupational classification as the old job," when the DHS has yet to render a decision on that question.  The immigration judge in this case determined that she had no "jurisdiction" to make that decision in the first instance, suggesting that she instead had only the jurisdiction to *review* the DHS's decision within the context of deciding an adjustment of status application, of which the portability of the I-140 may or may not be a part, depending on the case.  The BIA affirmed and the Matovskis appealed.  On appeal, the majority reverses that ruling and — as best I can tell[1] — holds that an immigration judge does have jurisdiction to decide portability as part of the overall adjustment of status adjudication in the removal proceedings.

I do not believe that this question of whether the immigration judge may decide in the first instance "if the new job is in the same or similar occupational classification as the old job," is actually a jurisdictional matter.  I would instead frame it as a procedural matter, perhaps more akin to exhaustion.  Although immigration judges have undoubtedly been granted authority (i.e., jurisdiction) to adjudicate adjustment of status applications raised in removal proceedings, *see* 8 C.F.R. § 245.2(a)(5)(ii), I do not agree that this grant of authority necessarily, and in all cases, extends to the decision of I-140 portability.[2]  There is no dispute that the original I-140

———————————

[1] My misgivings arise from the fact that the majority has herein decided for itself the factual question that the immigration judge refused to decide (i.e., "if the new job is in the same or similar occupational classification as the old job"), proceeding throughout its analysis as if it were a foregone conclusion that the conditions at Bob G. Turning and Milling "represented the same occupational classification and wage as Petitioner Matovski's previous offer of employment with Nikolic Industries." *See* Maj. Op. § III.B, *supra*.  Based on this treatment of the facts, it may be that today's actual, albeit implicit, holding is that an initially-valid-and-still-pending I-140 petition is portable, no matter what, and neither the DHS nor the immigration judge need make any decision regarding portability.  This is the argument that has been pressed by the Matovskis throughout, and I suppose that it might find support in the majority's analysis of 8 U.S.C. § 1154(j) and its unprompted interjection of 8 C.F.R. § 245.1(g).  Of course, such a holding entirely omits from 8 U.S.C. § 1154(j) the word "if" from the clause "if the new job is in the same or similar occupational classification as the old job."  I find, however, that I disagree with either version of the holding, so I need not dwell on this distinction.

[2] Relying on this same reasoning, the Fourth Circuit recently held that an immigration judge "necessarily has jurisdiction to make a § 204(j) determination, which is simply an act of factfinding incidental to the adjustment of status process." *Perez-Vargas v. Gonzales*, 478 F.3d 191, 194 (4th Cir. 2007).  I cannot agree, however, that just because an immigration judge is *capable* of making the portability decision (i.e., it "is simply an act of factfinding incidental to the adjustment of status process") that judge necessarily has the *right* to make this decision in the first instance.  This same reasoning would give an immigration judge the right to decide the Application for Alien Employment Certification (ETA-750), which is specifically dedicated to the Department of Labor, or to decide the original Petition for Alien Worker Visa (I-140), which is specifically dedicated to the DHS — each is, ultimately, "simply an act of factfinding incidental to the adjustment of status process."  In both of those scenarios, however, the decision is dedicated to the agency and the court may not make the decision in the first instance, even though the court is otherwise capable of doing so.  I believe this same limitation applies to the § 204(j) portability decision, and that, although the immigration judge is assuredly capable of making the decision, this decision — in the first instance — has been dedicated to the agency, and the immigration judge has been assigned a reviewer's role.

The *Perez-Vargas* court further hypothesized that, if the immigration judge could not make the § 204(j)

determination has been dedicated to the DHS, *see* 8 U.S.C. § 1154(a)(1)(F), and I would view the question of portability as little more than a subsequent I-140 determination that is likewise dedicated to the DHS. I believe the DHS's "Informal Guidance" — on which the majority places significant emphasis — also supports this view, in that it is a memorandum written to guide the DHS *Service Center Directors*, not immigration judges, on the manner by which this decision would be made. Furthermore, an immigration judge would not ordinarily conduct a *de novo* review of the DHS's decision regarding an I-140 application, but would grant the DHS certain deference. That is, had the DHS ruled on the Matovskis' portability question prior to the removal hearing, the immigration judge would not have been entitled to reassess that decision as if deciding it in the first instance, but would have reviewed the DHS's factual decision with the proper degree of deference. This reason alone — that this holding makes a morass of the nature of the immigration judge's consideration of I-140 petitions — would be sufficient to deem the majority opinion's holding both imprudent and improper.

I do agree that circumstances such as are present here, in which the parties are before the immigration judge in removal proceedings and the DHS has yet to offer a decision on portability, require that the alien facing removal have some recourse from the DHS's failure to act, but I do not agree that the only satisfactory answer is to reassign the DHS's decision to the immigration judge. This chooses the final, most extreme solution first. A less extreme solution would be for the immigration judge to compel the DHS to act. Alternatively, a better solution would be for the agency to amend the regulations regarding portability and, for instance, assign a presumption one way or the other for cases in which the DHS has failed to act. It might even be appropriate, as a practical matter, for a court to create such a presumption until such time as the agency enacts a rule. However, I believe it is improper for this court to bypass these possibilities and instead instruct the immigration judge to usurp the prescribed role of the DHS and make the decision in the first instance as if the immigration judge and the DHS are one and the same. It should go without saying that they are not; by design, the immigration judge and the DHS have separate roles. Therefore, based on these separate roles, I would hold that the portability decision must be left with the DHS.

In the present case, the Matovskis never petitioned or urged the DHS to make a portability decision — not even once. In fact, the Matovskis did not even tell the DHS of the job change for almost three years. Mr. Matovski changed jobs on November 27, 2000, but did not inform the DHS that he had done so until September 16, 2003; almost three years later, which was seventeen (17) months *after* the DHS had initiated removal proceedings (April 11, 2002) and just ten months before the removal hearing (July 22, 2004). At the hearing, the Matovskis never moved the immigration judge to compel the DHS to make this decision. Instead, the Matovskis insisted that even the immigration judge could not make the portability decision, and that portability was automatic. Of course, even if the Matovskis had urged the DHS to make the decision, such a request would likely have been futile, since the DHS had already denied their Application to Register Permanent Residence or Adjust Status (I-485) over two years earlier (April 11, 2002) on entirely different grounds. Therefore, it is likely that by the July 22, 2004, hearing, the DHS viewed the I-140 portability question as moot.

---

portability decision in the first instance, then "it would effectively deny the benefits of § 204(j) to those aliens who are in removal proceedings." *Perez-Vargas*, 478 F.3d at 195. The court explained:

> [If] an alien in removal proceedings cannot invoke the protections of § 204(j) before the IJ but, instead, must seek administrative closure of the removal proceedings and ask DHS to determine the continuing validity of his visa petition pursuant to § 204(j) . . . [then], because administrative closure requires the consent of DHS, the alien's access to § 204(j) lies within the discretion of the government. If DHS were to refuse the alien's request for administrative closure - as it did in this case - the alien would be unable to avail himself of the process which Congress provided in § 204(j).

*Id*. As further discussed above, however, I do not believe that this single, and very limited, approach is the alien's only recourse to the DHS's failure to reach a decision on portability. Because I find the reasoning underlying the *Perez-Vargas* decision unpersuasive, I conclude that it provides no support for a similar outcome in the present case.

Both the DHS and the immigration judge denied the Matovskis' applications for adjustment of status based on an undisputed and indisputable finding that the Matovskis had, over the course of several years, procured numerous visas through willful misrepresentation of a material fact. The Board did not reach this issue, but instead affirmed the immigration judge on the portability issue, which was sufficient to resolve the case. In resolving this appeal, the majority holds that because the Board did not reach this issue, we may not do so in the first instance. I think the majority is correct in this respect, but this holding is suspiciously at odds with the majority's holding that the immigration judge must decide portability in the first instance, despite the fact that the DHS had not reached the issue. I find no reasoning in the majority opinion to explain when a reviewing court should defer to the agency and when it should not. Without such an explanation, the opinion is merely an *ad hoc* decision that provides no guidance for future cases and does not further the law. Instead, it confuses the law in an effort to further its own ends.

The majority also takes the unusual approach of remanding this case to the immigration judge to decide the portability issue, with an acknowledged anticipation that the adverse credibility decision "will require review on the merits by the Board upon appeal from the Immigration Judge's [subsequent portability] decision." Thus, despite the fact that the adjustment of status application has been (and remains) denied based on the immigration judge's adverse credibility determination, the majority has effectively stayed any review by the Board of the immigration judge's adverse credibility decision until the immigration judge has rendered a new decision on the portability issue. The portability issue, just like the adverse credibility issue, is merely an alternative basis for deciding the adjustment of status application. One has no more importance than the other. If, as the majority concludes, there is a need to remand this case — a conclusion with which I disagree — then the proper approach would be to remand it to the Board to rule on the credibility issue. If the Board were to affirm the immigration judge on the credibility issue, the case would be over; if not, then the Board could remand the case to the immigration judge to reconsider the portability issue based on the majority's holding herein. This approach would avoid wasted time and effort, and more importantly, it would afford the Board its proper role in this process.